[Civ. No. 1147.   Third Appellate District.—April 8, 1914.]

# EDWARD McGINN, Respondent, v. CHARLES F. WIL-LEY, Appellant.

SPECIFIC PERFORMANCE OF CONTRACT TO SELL REALTY—SUFFICIENCY OF COMPLAINT—NECESSITY OF ALLEGING WRITTEN CONTRACT.—In an action by the vendee of a one-sixth interest in a mine for specific performance of the contract of sale, the absence in the complaint of an allegation that the contract is in writing is not fatal; it will be presumed, if necessary, that the contract is written.

ID.—STATUTE OF FRAUDS—PART PERFORMANCE OF ORAL CONTRACT.—A parol agreement to purchase an interest in a mine is taken out of the operation of the statute of frauds by the vendee paying part of the purchase price, taking possession of the mine, and performing labor and making improvements therein.

ID.—SUBSEQUENT SALE BY VENDOR—REMEDY OF VENDEE.—If the vendor, after making such parol agreement, sells the property to a third person and promises to account therefor to the vendee, the vendee, in his suit for specific performance, may recover the amount received by the vendor on account of such sale. He is not required to bring a separate action to recover such money.

ID.—PAROL CONTRACT TO CONVEY—PART PERFORMANCE—SPECIFIC PERFORMANCE—REVIEW ON APPEAL.—Where there has been a part performance of an oral contract to purchase an interest in a mine, and the trial court, in an action by the vendee for specific performance, has decreed the complete execution of the agreement, an appellate court should not interfere unless it appears clearly that the decision is inequitable and unjust. In the case at bar it cannot be said that the court below was not entirely warranted in exacting of the defendant a compliance with his contract.

ID.—CONTRACT BY COTENANT TO CONVEY—NECESSITY OF EXCLUSIVE POSSESSION.—Where a tenant in common in a mine makes a parol agreement to convey his undivided interest, it is not necessary that he should deliver exclusive possession of the mine to the vendee in order to render possession an effective circumstance in decreeing specific performance in favor of the vendee. It is enough that the vendee is substituted in the use and occupancy of the property for the vendor.

ID.—SPECIFIC PERFORMANCE—POSSESSION OF VENDEE—RULE THAT IT MUST BE EXCLUSIVE.—The rule that under an oral contract to purchase realty the vendee must be in possession of the property in order to have specific performance, requires no more than that his possession shall be exclusive of the possession of the vendor.

Id.—Defense to Action—Sale by Vendor to Third Person.—In an action by a vendee for specific performance of a contract to sell an interest in a mine, it is no defense that the vendor, after making the contract with the vendee, sold the property to third persons, if he has not thereby completely divested himself of the legal title.

Id.—Novation—Insufficiency of Evidence to Show Substitution of Agreement.—The evidence in this action by a vendee for specific performance is sufficient to sustain the finding of the trial court that the contract upon which the plaintiff relied was not superseded by another agreement, and was not intended to constitute a novation.

Id.—Pleading Novation—New Matter of Defense.—Novation is new matter of defense, in the nature of release or discharge, which must be specially pleaded.

APPEAL from a judgment of the Superior Court of Mariposa County and from an order refusing a new trial. J. J. Trabucco, Judge.

The facts are stated in the opinion of the court.

J. B. Curtin, and F. P. Otis, for Appellant.

J. C. Webster, for Respondent.

BURNETT, J.—We can perceive no valid objection to the sufficiency of the complaint in this action for the specific performance of an agreement to sell one-sixth interest in a certain mine in Mariposa County. The terms of the contract are set out, the tender of the balance due and a demand for a deed and defendant's refusal to comply with the demand appear and it is further alleged: "That the said agreement of purchase and sale between plaintiff and defendant was in every respect fair and equitable and no advantage of any kind was taken of defendant and the said consideration so to be paid was a fair consideration for the said interest in said property, and the said sum of two hundred and sixty-five dollars was the value of said interest in said property at the time of said agreement of sale between plaintiff and defendant and the full amount asked by defendant therefor."

In support of the complaint it would be presumed, if necessary, that said contract to sell and purchase was in writing, nothing appearing to the contrary. However, upon the sup-

position that it was a parol agreement, which it was shown
to be by the evidence, there is sufficient to take the case out
of the statute of frauds by reason of the allegation of cer-
tain payments and that "defendant then and there delivered
possession of the said property to plaintiff and plaintiff went
into possession thereof under and by virtue of said contract
of purchase and performed work and labor on the said prop-
erty and has ever since remained in possession thereof" and
that said work and labor in the development and improve-
ment thereof enhanced the value of said property.

Another element, somewhat unusual in this class of cases,
is injected by the allegation that after plaintiff had gone
into possession of the property under said agreement of sale
the defendant and the owners of the other interests in the
mine entered into an executory contract to sell it to other
parties for thirty thousand dollars, a portion of which had
been paid to defendant, and that the executory contract was
executed by defendant "under the express agreement and
understanding that he was acting as the trustee of the plain-
tiff herein in executing the same and that he would account
to the plaintiff for all moneys realized by virtue thereof by
the said defendant, but the said defendant has failed and
refused to account to plaintiff for the said money or any part
thereof and has failed and refused and still continues to refuse
to pay the same to plaintiff, or any part thereof though
demanded so to do."

It is clear that if the contract of sale between plaintiff
and defendant was executed as alleged in the complaint
plaintiff became the equitable owner of the property upon
compliance with its terms, defendant holding the legal title
in trust for the benefit of plaintiff, and it would necessarily
follow that the latter would be entitled to whatever was paid
by another for that interest, but we have the additional con-
sideration that defendant promised to account therefor to
plaintiff, and we can discover no reason why the latter should
be required to resort to another action to recover it.

The principle is analogous to that set forth in the case of
*Heinlen* v. *Martin*, 53 Cal. 341, wherein it is said: "If the
plaintiff holds only the equitable title, and is forced to go
into a court of equity to compel a conveyance of the legal
title it is well settled that he cannot afterward maintain an

24 Cal. App.—20

action at law for the mesne profits, for the reasons, already indicated; and if he cannot recover rents and profits in the action in equity he is without remedy. But, fortunately, a court of equity will not permit so great a wrong and will afford complete relief in such a case. 'If there is a trust estate, and the *cestui que trust* comes into equity upon his title to recover the estate, he will be declared to have the further relief of an account of the rents and profits.' (1 Story's Equity Jurisprudence 512; *Dormer* v. *Fortescue* 3 Atk. 124, [26 Eng. Reprint, 875].)''

In the opinion is cited, with approval, *Worrall* v. *Munn,* 38 N. Y. 137, wherein the facts were similar to those herein, except that the third party had taken possession, the New York court of appeals declaring: ''The general rule on this subject, as laid down by the elementary writers, and in the adjudged cases, is, that the court of equity will, so far as possible, place the parties in the same situation as they would have been if the contract had been performed according to its terms; and, to that end, the vendor will be regarded as trustee for the benefit of the purchaser and liable to account to him for the rents and profits; and the purchaser will be treated as trustee of the purchase money, if not paid, and will be charged with interest thereon and when the vendor is himself in the actual occupation of the premises, he is charged with the value of the use and occupation.'' (See, also, *Swain* v. *Burnette,* 76 Cal. 303, [18 Pac. 394].)

Here, as we have seen, it appears that plaintiff was entitled to a conveyance at the time of the execution of said contract of sale with said third parties, and, therefore, in equity, he was deemed the owner and a just claimant of the consideration received by defendant.

An additional assurance of the soundness of respondent's position is found, of course, in the allegation of defendant's agreement to account to plaintiff.

There can be no doubt as to the sufficiency of the evidence to support the finding as to a valid sale of the premises to plaintiff. This is demonstrated by his own testimony, which, in material respects, is corroborated by the testimony of other witnesses. As to this point we deem it unnecessary to do more than quote the following from plaintiff's statements on the witness stand: ''Willey told me that he wanted to sell his

one-sixth interest in that mine and that he would take two
hundred and sixty-four dollars for the same, and I accepted
his offer. I wanted to take it all then but I didn't have the
money to pay for it and he said I could pay one half cash
and the other half within one year, and I paid the half and
he accepted it. I had a lot of mining supplies and materials
at Stent and I loaded those tools and cars and blacksmith
shop tools, all of which was about the value of four hundred
dollars and I put them on two wagons and pulled the wagons
to the top of the hill and started for the mine the next
morning. I told Willey at that time if I took out a pocket
of ten thousand dollars he would be sorry he sold me the
mine but he said it was all right and whatever I took out of
the mine belonged to me; that all he wanted out of it was
the amount he had put into it; that he was glad to get out
of it and everything I made out of it I was welcome to. Two
hundred and sixty-five dollars was a reasonable price for his
interest in the mine at that time. It was the value of that
interest. After I took possession of the property I worked
on the mine timbering the same. We were trying to make
a showing to sell the mine. We worked there five months
from August, 1907, my brother William and myself, and
then I came back and I brought Pete Strike with me; that
was about the last of January or in February, 1908, and he
worked two months. We were drilling and blasting and
looking for pay ore, drifting and opening up the mine, left
the quartz and ore right on the property for the purpose
of opening it up to get a purchaser. From July, 1907, the
work I did enhanced the value of the property. Before the
payment of one hundred thirty-two and 50/100 dollars was
due before the end of that first year I·asked for further time
and Willey extended the time. He told me it would be all
right, I could take plenty of time and he extended the time
to September, 1909. About September 1st, 1909, I had
the balance of $132.50 and took the same to the defendant,
Mr. Willey, and offered it to him in payment of the balance
due, but I wanted to use $32.50 and Mr. Willey said I could
use the $32.50 as long as I wanted it; I could pay him when
it suited my convenience. I went into possession under that
agreement of purchase.''

As to the bond to sell the property he testified: "That agreement was entered into on November 13th, 1909. I negotiated with James McGinn about the sale of that mine. The defendant, Mr. Willey, had nothing whatever to do with any agreement relative to the sale of the mine except to sign the papers when they were ready. We had an understanding at the time that I bought that interest from him that he was to sign all papers for the sale of the mine if we sold it up to the time I got the deed from him; he was to sign any papers I wanted. It was understood and agreed between Willey and me that after July 1st, 1907, when I bought him out, everything that came out of the mine belonging to that one-sixth interest would belong to me. That it was my property and he had no further interest in it except for the balance of the purchase price. That I was entitled to all that interest would bring. Willey said all he wanted was his money back and that he hoped I would do well with it; that I was welcome to all I could make out of it. Ever since I bought Willey out in July, 1907, I have done all the assessment work and paid the taxes on that interest." To the foregoing it may be added that the testimony shows also a formal tender of the balance due and a demand for the deed with defendant's refusal as alleged in the complaint.

This brings the case clearly within the well-recognized rule of equity set forth in such cases as *Day* v. *Cohn*, 65 Cal. 508, [4 Pac. 511]; "Possession of a lot of land under a parol contract for the sale thereof, the expenditure of money in its improvement, and partial payment of the purchase price constitute part performance of the contract which takes it out of the statute of frauds, and entitles the vendee to a specific performance of the contract," and furthermore, in answer to appellant's contention that the agreement was too indefinite as to the time for the payment of the $32.50, we may quote from the syllabus, as follows: "No definite time was stated in the agreement for the payment of the purchase money, but by the terms of the agreement, payments were to be made from time to time as the money should be earned by the vendee. *Held*, that time was not of the essence of the agreement, and that a failure to make payments as the money was earned did not affect the rights of the vendee, the vendor having acquiesced in the delay."

Additional citation is not required, as the principle is familiar. Indeed express statutory authority for its application is found in section 1972 of the Code of Civil Procedure, which, in referring to section 1971, requiring every "transfer of real property to be in writing," provides: "The preceding section must not be construed . . . to abridge the power of any court to compel the specific performance of an agreement in case of part performance thereof."

We deem it unnecessary to notice specifically the cases cited by appellant, as they are not at all inconsistent with the position of respondent. Of course, the trial judge is clothed with wide discretion in according or withholding specific performance. This necessarily follows, as the judgment must depend upon the impression made by the particular circumstances of the case upon the court's sense of justice and equity. We naturally expect and find, therefore, opposite conclusions reached in some cases involving apparently slight differences as to the facts. But where there has been a part performance and the lower court has decreed the complete execution of the agreement, an appellate court should not interfere unless it appears clearly that the decision is inequitable and unjust. In the case at bar we cannot say that the court below was not entirely warranted in exacting of defendant a compliance with his contract.

In this connection it may be said that appellant is in error in his position as to the significance of plaintiff's possession of the premises. The contention seems to be that defendant must have delivered *exclusive* possession of the mine to render it an effective circumstance in decreeing specific performance. This would be impossible, since defendant was only a tenant in common and he could not destroy the right of his cotenants to enjoy their respective interests. The rule requires no more than that the possession of the vendee shall be exclusive of the vendor, that the former, in the use and occupancy of the property, shall be substituted for the latter. That equity should require the vendee of an undivided interest to unlawfully exclude his cotenants from the possession of the property as a condition precedent to the maintenance of "part performance" would be rather a startling doctrine to proclaim.

In *Peek* v. *Peek*, 77 Cal. 108, [11 Am. St. Rep. 244, 1 L. R. A. 185, 19 Pac. 228], it is said: "The reason assigned for holding possession to be part perfomance is, that unless validity be given to the agreement the vendee would be a trespasser. . . . The possession which is referred to by the cases which hold it to be sufficient part performance is a possession exclusive of the vendor." It is manifest that herein plaintiff would have been a trespasser if effect were not given to his agreement with defendant and it is equally plain that his possession of the mine was exclusive of the vendor.

There is no more merit in the contention that defendant should not be required to perform the contract since it became impossible by reason of the contract of sale to said third parties. However this would not apply to said payment received by defendant. It is also clear that he had not entirely divested himself of the legal title to the undivided one-sixth and as to this the decree would operate.

In *Farnum* v. *Clarke*, 148 Cal. 610, [84 Pac. 166], it is said: "It is no answer for a vendor to say when specific performance is set out in the contract that the interest in the title, which the decree seeks to effect, is not as complete as he agreed to convey. If the vendor is willing to enforce the contract against a lesser interest or a less perfect title, it does not lie with the vendor to object on that account. It is only when the vendor has no title nor interest in the lands at all that such a decree will not be awarded, for the very good reason that courts will not attempt to require done what it is so impossible to do. If, however, the vendor has any interest in the property contracted to be conveyed, the vendee may enforce the contract as to whatever interest he may possess," citing cases.

Another contention is worthy of more serious consideration. It is insisted that according to plaintiff's own testimony the contract upon which he relies was superseded by another agreement subsequently made, and that any failure on the part of defendant to perform the second would not revive the first contract. Attention is called to plaintiff's testimony as follows: "Q. Now, Mr. McGinn, isn't it a fact, as you testified, you made a fair, square agreement with Mr. Willey that if he would pay you back the one hundred dollars that you paid him on the second payment on that mine that you

and he would then share equally in that ownership and
all moneys that would result from a sale of the mine? Ans.
Yes. Q. Now when he went back on that agreement, as you
say, to divide equally, you went back on your agreement
also? Ans. When he (Willey) went back on his agreement
to divide equally I went back on mine also. Q. You canceled
the old agreement by agreeing to divide the five thousand
dollars, he have half and you half, and when he went back
on his agreement you wanted to revive the old agreement?
Ans. Yes, that is about the way it was." It is therefore
claimed that we have a case of novation, to wit, the "substitu-
tion of a new obligation between the same parties with intent
to extinguish the old obligation." (Civ. Code secs. 1530 and
1531.)

It is but fair, though, to say that this statement of the wit-
ness was qualified by his further declaration: "The old agree-
ment was still in force. The old agreement was to remain the
same as it was but I was to take him back and divide the
one-sixth interest with him when he gave back the one hun-
dred dollars but he went back on this agreement and said
he had concluded to keep all the property and the money I
had paid him also. Then I offered him the $132.50 and he
refused to take it and I offered to deposit it in a bank for him
but he said if I did so it would be at my own risk."

This would justify the court in finding that the second
agreement executed was not intended to constitute a novation
and having been repudiated by defendant it did not extinguish
the first obligation. Besides, the defendant himself testified
that there was no such second agreement and the court might,
of course, have adopted his version of the matter.

The trial judge, though, undoubtedly accepted the account
given by plaintiff, as, among the findings, we discover the
following: "That thereafter, to wit, about August 1st, 1910,
plaintiff requested of defendant the use of $100 and defend-
ant returned to plaintiff the sum of $100 and it was then and
there mutually agreed between plaintiff and defendant that
in consideration of the return of said $100 that said plain-
tiff and defendant would share equally the said one-sixth
interest in said mining property, but immediately thereafter,
to wit: on or about two weeks after the 1st day of August,
1910, said defendant repudiated his agreement to share one-

half of said interest with the plaintiff herein and stated to plaintiff to the effect that he had concluded to retain all of the moneys paid on account of the purchase price of said property and the property itself and would not deed to plaintiff any part thereof and no longer recognized plaintiff as having any rights whatever in or to the said property or any part thereof.''

It is to be observed, however, that the finding is not broad enough to include a novation since there is no declaration therein that the agreement was made with the intent to extinguish the old obligation.

Besides, this finding is entirely without the issues and will be disregarded. (*Marks* v. *Sayward,* 50 Cal. 57.) Indeed, defendant did not rely upon a novation but, to the contrary, disclaimed it, and this no doubt is the reason that he did not plead it in his answer. It is held to be new matter of defense in the nature of release or discharge which must be specially pleaded. (*Piercy* v. *Sabin,* 10 Cal. 30, [70 Am. Dec. 692] ; *Coles* v. *Soulsby,* 21 Cal. 50; *Temple* v. *Teller Lumber Co.,* 46 Colo. 497, [106 Pac. 8].)

Some other questions of minor importance are discussed by counsel but a consideration of all the points made leaves us satisfied that the judgment and order denying the motion for a new trial should be affirmed and it is so ordered.

Chipman, P. J. and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 6, 1914.