[Civ. No. 2780.    Third Appellate District.—December 8, 1924.]

## D. F. HANLEY, Respondent, v. D. B. MURPHY, Appellant.

[1] CONTRACTS—STATUTE OF FRAUDS—EVIDENCE—FAILURE TO OBJECT— RIGHT TO MOVE TO STRIKE OUT—REBUTTAL.—The right to defeat the evidentiary effect of a purported agreement which is invalid under the terms of the statute of frauds is not waived or lost because of failure to object to testimony introduced to prove it at the time the same is offered, a motion to strike out after all the evidence as to the agreement is received being equally as appropriate for removing the testimony from the record as objections made at the time the testimony is offered; and where the court's ruling upon the motion to strike out such testimony is reserved until the close of the case, it is proper for the person making the motion to strike out such testimony to introduce evidence in rebuttal thereof.

[2] ID.—ORAL LEASE — CONDITIONAL CANCELLATION. — An oral agreement of lease to commence at a future date and to run for a period of one year thereafter does violence to the statute of frauds; and a subsequent oral agreement (entered into after the commencement of the term of such void lease) to cancel said lease upon the happening of a specified condition does not constitute a ratification of such lease but leaves it as it was made if the condition fails.

[3] ʻID.—OFFER TO REDUCE TO WRITING—STATUTE NOT SATISFIED.—The fact that the lessor under an oral lease to run for a period of one year from a specified future date proposed to put such agreement in writing, coupled with the fact that the lessees expressed a willingness to proceed under it without its being reduced to writing, did not have the effect of taking such lease out of the statute of frauds.

[4] ID.—VOID LEASE—RATIFICATION.—While a voidable contract may be ratified, a contract which is not binding in any event cannot be validated by ratification, but there must be some act which is the equivalent of the execution of a new contract, or something which operates as an estoppel.

[5] ID. — NEW CONTRACT — COMPLIANCE WITH STATUTE — PLEADING. — Where a contract is void because of being in contravention of the terms of the statute of frauds, a new contract may be made that is in all respects valid and enforceable, and this by complying with the terms of the statute; but in such a case the new contract and not the old and invalid one must be pleaded and so relied upon.

[6] ID.—ACTION TO RECOVER FOR SERVICES — EVIDENCE — FINDINGS — VOID ORAL AGREEMENT — QUANTUM MERUIT. — In this action to recover compensation for services as a sheep herder, the testimony of plaintiff and his witnesses furnished ample support for the finding of the trial court to the effect that defendant hired plaintiff and that the latter performed the services described in the complaint, upon the theory that such services were performed under an express agreement of employment; but assuming the evidence showed (as pleaded by defendant in his answer) that such services were performed by plaintiff under an oral agreement of lease whereby plaintiff was to herd, run, and care for defendant's sheep and was to receive a certain fractional part of the wool and of the lambs as his compensation, such agreement

2.  See 25 R. C. L. 453; 12 Cal. Jur. 857.

3.  See 12 Cal. Jur. 935.

6.  On right to *quantum meruit* for services rendered under parol contract unenforceable because not to be performed within a year, note, L. R. A. 1916D, 895. See, also, 25 R. C. L. 722; 12 Cal. Jur. 932.

having been void under the statute of frauds, the finding of the trial court could be upheld upon the theory of an implied contract, as upon a *quantum meruit.*

---

(1) 27 **C. J.**, p. 373, n. 55 New, p. 374, n. 64 New.   (2) 27 **C. J.**, p. 176, n. 69, p. 186, n. 82, p. 340, n. 72 New.   (3) 27 **C. J.**, p. 340, n. 72 New.   (4) 2 **C. J.**, p. 470, n. 74, 75; 27 **C. J.**, 312, n. 7, p. 340, n. 72 New.   (5) 27 **C. J.**, p. 377, n. 2 New.   (6) 27 **C. J.**, p. 363, n. 54.

APPEAL from a judgment of the Superior Court of Modoc County. F. M. Jamison, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. C. Bonner and C. S. Baldwin for Appellant.

Robnett & Wylie for Respondent.

HART, J.—This action was brought by plaintiff to recover from defendant the sum of $1,660, alleged to be the balance of the sum of $1,750 due plaintiff for labor performed by him for defendant.

The complaint alleges that, on the fifteenth day of April, 1920, in Modoc County, this state, defendant employed plaintiff to perform labor for the former in herding, looking after and caring for a large band of sheep belonging to defendant, upon an agreement that defendant would pay plaintiff for the labor so performed, wages or compensation at the rate of $100 per month; that plaintiff, in pursuance of said employment, commenced to perform said services for defendant on the said fifteenth day of April, 1920, and continued to work for defendant for the said agreed monthly compensation during all the period of time from said fifteenth day of April, 1920, until the first day of October, 1921; that by reason of said contract of employment and the services rendered by plaintiff in pursuance thereof, defendant became indebted to the former in the aggregate sum of $1,750, upon which defendant paid plaintiff, in cash and otherwise, the sum of $90, leaving a balance due plaintiff in the sum of $1,660, which sum is now due and owing from defendant to plaintiff.

The defendant, in an amended answer, specifically denied the employment of plaintiff as alleged in the complaint, except for a period beginning with May 15, 1920, and ending

October 15, 1920, and, as to said employment, alleges that plaintiff during said period performed labor for him in Modoc County, California, and in Klamath County, Oregon, for which it was agreed between the two that defendant was to pay plaintiff the sum of $65 per month, which said sum was the "then going wages for a farm-hand and an experienced sheep herder."

As a further and separate answer and defense, the defendant alleged that "on or about" October 1, 1920, in Klamath County, Oregon, the defendant verbally leased to plaintiff and one Eugene O'Sullivan, "who were copartners," 1220 ewe sheep, upon the express understanding and agreement that said plaintiff and O'Sullivan should herd, run, and care for said band of sheep from October 1, 1920, to and including October 1, 1921, and that in consideration thereof they were to receive half of the wool and lambs derived from said band of sheep, the other half to go to and be retained by defendant; that "it was then and there agreed by and between said parties that the second parties (plaintiff and O'Sullivan) should pay all costs and expenses of running and maintaining said sheep for and in consideration of which they were to receive each one-fourth part of such wool and lambs; . . . ; that said plaintiff never at any time notified this defendant, prior to October 1, 1921, that he would not live up to said leasing contract, or abide by the same, but at all times since said lease of October 1, 1920, to and including October 1, 1921, and since, said plaintiff has worked and helped care for said sheep under the terms and provisions of said agreement and pursuant thereto and not otherwise," etc. Other allegations in connection with the "further and separate answer and defense" constitute a statement only of what is involved in his denial of the employment of the plaintiff except for the above indicated period of a few months.

The court found that the contract of employment between plaintiff and defendant, so far as the services to be performed by plaintiff were concerned, was made as alleged in the complaint; that the plaintiff performed the services for which he was so employed during all the period of time from the fifteenth day of April, 1920, to the first day of October, 1921; that said services were performed in part at the ranch of defendant near Merrill, Klamath County, Oregon, and in part on the public sheep range in Modoc County,

California; "that the going wages for and the reasonable value of the work so performed by the said plaintiff for the said defendant in the neighborhood where the same was performed as aforesaid, for the period starting on the 15th day of April, 1920, and ending on the 31st day of December, 1920, was the sum of $687.50, and that the going wages in the neighborhood where said work was performed and the reasonable value of said work performed by the plaintiff for the said defendant for the period from the 1st day of September, 1921, was and is the sum of $775.00 and that the total reasonable value of the services performed by the said plaintiff for the said defendant for the entire period covered by said agreement of employment, namely from April 15th, 1920, to and including September 30, 1921, was and is the sum of $1,462.50."

It was further found that the only payments made by defendant to plaintiff on account of the labor performed by the latter under said contract of employment were the sum of $30 in cash and the sum of $60 for merchandise obtained by plaintiff from stores in the neighborhood where said services were performed and which were charged by plaintiff to the account of defendant. The court further found that no lease such as is set forth in the answer of defendant or any lease of a band of sheep whatsoever was at any time ever made by and between defendant, as lessor, and plaintiff and one Eugene O'Sullivan, as lessees, or that any lease of sheep was ever made by defendant either to plaintiff alone or to plaintiff in connection with any other person, but that plaintiff did help care for sheep belonging to defendant and worked on the farm and range of defendant "as a hired man and for the going wages hereinafter found, at the special instance and request of said defendant and said plaintiff never worked for said defendant for any other or different wages or upon any other or different understanding or agreement than as hereinbefore found."

Judgment passed for the plaintiff for the sum of $1,372.50 and the defendant appeals.

The plaintiff testified that, on the thirteenth day of April, 1920, in Klamath County, Oregon, the defendant employed him as a ranch-hand and sheep herder and agreed to pay him for the labor so performed at the rate of $100 per month; that, on the morning of the fifteenth day of April,

1920, and in pursuance of the terms of said employment, he commenced working for the defendant on the latter's ranch in said county of Klamath and continued so to work for a short period of time, when he was transferred by defendant to the sheep range in Modoc County, California, upon which the latter intended to and did graze his sheep; that the services performed by him for defendant in Klamath County, Oregon, consisted of feeding the stock on the range and otherwise caring for them, and also, occasionally, cooking or assisting in cooking on the ranch; that in Modoc County he devoted himself entirely to the herding of a band of sheep belonging to the defendant, and that, with the exception of half a month, he worked for defendant under said contract of employment continuously from the fifteenth day of April, 1920, until the first day of October, 1921; that the compensation which the defendant agreed to pay him, to wit, the sum of $100, was in accord with the "going wage" paid for such services as he performed in the localities in which he performed them, and constituted the reasonable value of such services. The witness Betts testified that the defendant, in the month of October, 1920, told him that he (defendant) was paying the plaintiff and one O'Sullivan, also assisting the former in herding and caring for the sheep, for services as such herders the sum of $100 per month.

Upon the close of the plaintiff's case the defendant took the witness-stand and denied that the plaintiff and O'Sullivan were at any time employed by him to herd and care for his sheep or that he agreed to pay them any compensation for such services, but, in response to the special defense set up in his answer, testified that he and the plaintiff and the said O'Sullivan entered into an oral agreement (which defendant called a lease) whereby the plaintiff and said O'Sullivan, as copartners, were to take possession of, herd and otherwise care for said sheep for the term of one year, and that in consideration thereof they were to receive between them half of the lambs and the wool produced therefrom during said term, the "lessees" to pay all expenses, the defendant agreeing to an allowance to Hanley and O'Sullivan of three per cent "on losses of old stock." As to the alleged agreement or lease, the defendant testified that on or about the tenth day of September, 1920, he agreed with Hanley and O'Sullivan to lease them his sheep for one year, beginning with the 1st of October, 1920, and ending on the 1st of

October, 1921, upon the terms above indicated; that they then agreed to take or "lease" the sheep on said terms and did take possession of them under said agreement.

[1] After all the evidence as to the alleged agreement was received counsel for the plaintiff moved to strike out all evidence relating to said agreement on the ground that the same was invalid and void under the terms of section 1624, subdivision 1, of the Civil Code, which reads:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent:

"1. An agreement that by its terms is not to be performed within a year from the making thereof."

In reply to the motion the judge stated that he would "hear the evidence and consider it for what it is worth."

The plaintiff, on the close of defendant's case, testifying in rebuttal, positively stated that, while it was true that the defendant on the 10th or 12th of September, 1920, said something to him and O'Sullivan about "leasing" the sheep to them, he declined to enter into any such agreement, that no such agreement was made and that he continued herding and attending the sheep under the terms of the contract of employment entered into between him and the defendant on the thirteenth day of April, 1920.

On the close of the whole case the court filed a written opinion in which he held that plaintiff was entitled to judgment for the sum awarded him by the judgment and which opinion also embraced an order granting plaintiff's motion to strike out all evidence addressed to the proof of the alleged agreement of lease on the ground upon which the motion was made, and ordered findings and judgment in favor of the plaintiff, as indicated.

The procedure adopted and followed by the plaintiff in meeting the defendant's special defense was proper. (Code Civ. Proc., sec. 462; *Melander* v. *Western Nat. Bank,* 21 Cal. App. 462, 467 [132 Pac. 265], and cases therein named.) The issue as to the alleged agreement of lease could have been met by objection to testimony offered to prove the same, if it had at once appeared that the same was in contravention of the statute of frauds, but the right to defeat the evidentiary effect of a purported agreement which is invalid under the terms of the statute is not waived or lost because of failure to object to testimony introduced to prove it at

the time the same is offered, a motion to strike out being means equally as appropriate for removing the testimony from the record as objections made at the time the testimony is offered. As Mr. Justice Galen of the Montana supreme court, in *Dreidlein* v. *Manger,* 69 Mont. 155 [220 Pac. 1107, 1109], says, in considering a statute of his state in precisely the same language as that of our section 1624, subdivision 1, of the Civil Code, the agreement being invalid under the terms of the statute, is void and of no force or effect, for which reason it "cannot be relied upon to furnish evidence for any purpose." Such an agreement may, therefore, be removed from the record at any time during the trial by any means or mode of proceeding sanctioned by the law.

[2] The agreement here, according to the testimony of the defendant himself, was made in the month of September, 1920, and its operative effect was to begin on October 1, 1920, and to continue until October 1, 1921. It rested wholly in parol, and was not to be performed within a year from the time it was made. Hence "it did violence to the statute of frauds." (*McKeany* v. *Black,* 117 Cal. 587 [49 Pac. 710]; *Long* v. *Cramer Meat & Packing Co.,* 155 Cal. 402, 406 [101 Pac. 297].) Indeed, counsel for the defendant, in their brief filed in support of this appeal, virtually concede that the purported agreement was and is void and wholly without evidentiary force because of its antagonism to the terms of subdivision 1 of section 1624 of the Civil Code; but they contend that a new oral agreement embracing precisely the same terms was made about the middle of the month of October, 1920, in this wise: That the defendant and Hanley and O'Sullivan met at the time just mentioned and that defendant "told them (Hanley and O'Sullivan) that scab had broken out among the bucks, and that in case the ewes should develop scab that winter," the defendant proceeded, "I would not ask them to stay with the lease, for the reason that they were not financially fixed to handle a bunch of scabby sheep, and that we would have no written lease drawn up until spring when we were sure the ewes were clear of scab"; that, in the event that the ewes were found to be afflicted with scab he (defendant) would cancel the lease theretofore made, and that he would then pay Hanley and O'Sullivan wages for their services; that Hanley and O'Sullivan agreed to those propositions; that the sheep were later

subjected by a sheep inspector to an inspection to determine whether they were afflicted with scab and that said inspector found and reported that the sheep were free from that disease; that he (defendant) was informed of said finding and report by Hanley and O'Sullivan and the defendant then told them to "go on" with the sheep under the terms of the original agreement. Defendant, in this connection, further testified that he would later have the agreement reduced to writing, but that Hanley and O'Sullivan stated to him that no writing was necessary, as all were honest men and would live up to the agreement as made without putting it in writing.

It is clear that the above testimony does not disclose a new agreement. It merely shows that the defendant expressed to Hanley and O'Sullivan a willingness to cancel the alleged agreement of lease if the ewes were found to be afflicted with scab. The sheep were found not to be so afflicted, and, assuming that the agreement of September, 1920, as indicated, was made between the parties, it was not altered or changed at the time the conditional cancellation was suggested, but then and at all times thereafter remained precisely the same agreement as it was when originally made. The very proposition to cancel it upon the happening of the condition stated necessarily implied an intention to leave it precisely as it was originally made if the condition failed, and the condition did fail or not arise. In brief, the proposition of defendant to cancel the agreement amounted to nothing more than a proposition to terminate it upon the happening of a certain contingency, and that contingency not having happened, the agreement was not terminated but remained perfectly intact. [3] The fact that defendant might have proposed to put the agreement of September, 1920, in writing, coupled with the fact that plaintiff and O'Sullivan might have expressed willingness to proceed under it without its being reduced to writing, did not have the effect of taking it out of the statute. Nor did the alleged oral agreement of the parties in October, 1920, as to the cancellation of the agreement of September, 1920, operate as a ratification of the last mentioned agreement. [4] A voidable contract may be ratified. A void contract cannot be. A contract, "not being binding in any event, but being utterly void from the beginning, could not be validated by

ratification. There must be some act which is the equivalent of the execution of a new contract, or something which operates as an estoppel." (*Hakes Investment Co.* v. *Lyons,* 166 Cal. 557 [137 Pac. 911]; *Martin* v. *Zellerbach,* 38 Cal. 300 [99 Am. Dec. 365].) As is plainly manifest from the evidence, there were disclosed here no equitable considerations which would work an estoppel in favor of the defendant as to the parol agreement.

[5] But as to the alleged agreement of October, 1920, it is further to be observed that, even if it had constituted a "new agreement," still it could be of no avail to the defendant here, for the reason that he did not plead such an agreement, nor did he ask leave to amend his complaint for the purpose of setting it up. The agreement wholly relied upon by the defendant, as we have shown, was made in the month of September, 1920. The rule is well settled that all new matters or matters involving a special defense must be pleaded. (*Piercy* v. *Sabin,* 10 Cal. 22 [70 Am. Dec. 692]; *Coles* v. *Soulsby,* 21 Cal. 47; *Nordholt* v. *Nordholt,* 87 Cal. 552 [22 Am. St. Rep. 268, 26 Pac. 599]; *Bliss* v. *Sneath,* 119 Cal. 526, 528 [51 Pac. 848]; *Great Western Gold Co.* v. *Chambers,* 153 Cal. 307 [95 Pac. 151]; *McGinn* v. *Willey,* 24 Cal. App. 303 [141 Pac. 49].) Of course, it is only a trite statement to say that where a contract is void because of being in contravention of the terms of the statute of frauds, a new contract may be made that is in all respects valid and enforceable, and this by complying with the terms of the statute, but in such a case, obviously, such new contract and not the old or invalid one must be pleaded and so relied upon. (*Catlett* v. *Burke,* 96 S. C. 363 [80 S. E. 610].) The truth is that the so-called "new contract" (now referring to a contract made in pursuance of the statute) is a misnomer, since it is the only contract that has been made, for where parties have agreed to certain matters of contract, but the agreement is, under the statute of frauds, void, or nonenforceable because there is no competent evidence by which it can be proved, or void for any other reason, then the situation is the same as though no contract has been made at all.

[6] The finding that the defendant hired the plaintiff and that the latter performed the labor or services described in the complaint may be upheld either upon the theory of

an express agreement or that of an implied contract, as upon a *quantum meruit*. The testimony of the plaintiff and that of his witness Betts furnish ample support to said finding upon the theory that the plaintiff performed the services alleged in the complaint under an express contract of employment with the defendant. Upon all the testimony—indeed, upon the virtually if not actually admitted facts—the finding is supported upon the theory secondly suggested, assuming that such an agreement as is pleaded in the answer was made. This is true, even if the agreement amounted to a lease, as to which proposition there is, under the evidence, ground for serious doubt. The agreement, being invalid for the reasons above given, the plaintiff was, nevertheless, entitled to be compensated for his services, and this compensation he was entitled to recover upon a *quantum meruit*. As to this proposition and the reasons underlying it, L. R. A. 1916D, pages 895, 896, explains as follows: "Where either goods or services are furnished by one person to another who accepts them and derives the benefit therefrom, the courts hold, as a general rule, that the latter is liable as upon an implied contract to pay the value of that which he receives. Where services are performed under a parol contract unenforceable because not to be performed within a year, the situation is the same and the same principle is applicable."

Again, on the same page of the same work, it is said: "The rights and obligations of the parties depend in no way upon the express contract, but arise wholly out of the contract implied by law from the acceptance of the services rendered. For that reason the question as to who breached the express contract is, even in jurisdictions where the statute is held to render parol contracts merely voidable, not a proper one for consideration. The breach by either party will avoid it, and, having been avoided, no liability or obligation can be imposed upon the party guilty of the breach. And, moreover, the rights and liabilities existing between the parties under the implied contract can scarcely be said to be in any way dependent upon the identity of person who breached a wholly independent and void express contract. The servant has performed certain services and the master, having had the benefit of them, must make compensation. Therefore, for a court to inquire, before rendering judgment in an action of *quantum meruit*, into the question as to who

breached the contract, is both unnecessary and improper, and a decision based upon any such consideration must be deemed incorrect.'' See, also, *Dreidlein* v. *Manger, supra,* which, in the facts, is in striking resemblance to the instant case.

No other points are presented.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.