[Civ. No. 3704. Third Appellate District.—November 14, 1929.]

JENNIE FORBES et al., Plaintiffs, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Defendants and Respondents; KATHERINE FRANCISCO, Intervener and Appellant.

Swallow & Richards, Edward Brody and A. H. Swallow for Appellant.

Jess E. Stephens and Erwin P. Werner, City Attorneys, and W. B. Mathews, Floyd M. Hinshaw, Clarence S. Hill and S. B. Robinson for Respondents.

A. R. Honnold, *Amicus Curiae.*

FINCH, P. J.—The plaintiffs brought this action to cancel a deed purporting to convey to the defendant city the canal, water rights and other property of the McNally Ditch Company, a mutual water company. The interveners alleged the same facts and prayed for the same relief as the plaintiffs. The defendant city, which will be referred to as the defendant and respondent, entered into a compromise agreement with the plaintiffs and all of the interveners, except Katherine Francisco, by which it acquired their lands and water stock. The defendant filed answers to the complaint and the complaint in intervention, and also filed a cross-complaint against Mrs. Francisco. The cross-complaint contains two counts. The first count stated or attempted to state a cause of action for specific performance. The second stated a cause of action in eminent domain. The court found that the deed sought to be canceled is invalid. The second cause of action stated in the cross-complaint seems not to have been tried and need not be further noticed. Judgment was entered in favor of the cross-complainant city requiring Mrs. Francisco to convey to it the lands described in the cross-complaint and 61 shares of the capital stock of the McNally Ditch Company. She has appealed from the judgment. The court found the allegations of the cross-complaint to be true. Such allegations are in substance as follows:

The cross-defendant owns the lands described in the cross-complaint and 61 shares of the capital stock of the company. The lands are entitled to receive water from the company for the irrigation thereof. On and prior to August 4, 1924, all of the plaintiffs and interveners owned land within the service area of the ditch and shares of the capital stock of the company and such "lands and shares of stock . . . constituted all of the farm lands served by the said McNally Ditch and all of the shares of stock of the said McNally Ditch Company, owned and held in connection with farm lands, which had not then been acquired by the said defendant, . . . or in trust for it." Prior to the time mentioned all of the interveners "had authorized and empowered W. W. Watterson and M. Q. Watterson, . . . and each of them, to act as their agents or agent in negotiating for the sale to said defendant . . . of their several lands and shares of stock, . . . and said intervener, Katherine Francisco, had

authorized and empowered her said agents, and each of them, to agree on her behalf to sell her aforesaid lands and shares of stock to the said defendant . . . for the sum of $18,000.'' On the day stated, the interveners, ''acting by and through their said agent M. Q. Watterson, entered into and delivered to said defendant . . . an agreement in writing, whereby they agreed to sell to the said defendant . . . all of said lands and shares of stock of the said interveners for the aggregate sum of $206,450, and that at the time of the making of said agreement, it was understood between the said M. Q. Watterson and representatives of the said defendant . . . that $18,000 of said aggregate sum of $206,450 would be paid to and received by the intervener, Katherine Francisco, as the purchase price of her said lands and shares of stock.'' It was understood at that time by such agent, M. Q. Watterson, and the defendant that the defendant would not purchase any of the interveners' lands or stock unless it was able to purchase all of the lands and stock of all the plaintiffs and interveners. In reliance upon such agreement, the defendant, on August 5, 1924, entered into an agreement with the plaintiffs to purchase their lands and stock for the sum of $114,000. The defendant would not have agreed to purchase the plaintiffs' lands and stock if it had not believed that Mrs. Francisco would perform her agreement to sell her lands and stock to the defendant for $18,000. Prior to any notice or intimation from Mrs. Francisco that she would not perform her agreement, the defendant paid to the plaintiffs the full purchase price of $114,000 for their lands and shares of stock ''and paid in escrow, for the benefit of all of the interveners, in proportion to their respective interests, the aforesaid sum of $206,450.'' On or about December 26, 1924, Mrs. Francisco, ''through her said agent, W. W. Watterson, notified and advised the said defendant that she refused to perform her said agreement to sell and convey to said defendant . . . her said lands and shares of stock for the said sum of $18,000, or for any sum less than $24,000.'' The agreement of August 4, 1924, ''is and was at all times herein mentioned just and reasonable as to said intervener, Katherine Francisco,'' and the ''agreed purchase price of $18,000 is and was at all times herein mentioned, an adequate consideration for the transfer and conveyance of the said lands and shares

of stock of the said intervener . . . and more than the actual value of said lands and shares of stock."

The court further found that Mrs. Francisco "never, at any time, authorized or empowered either W. W. Watterson or M. Q. Watterson by any instrument in writing, to act as her agent, or agents for the sale of her property to the defendant, . . . or any other person or corporation whatsoever, and that said Watterson, in negotiating and contracting for the sale of the intervener's land and water stock" to the defendant was "acting upon her verbal authorization only"; and that the defendant "never at any time, in reliance upon the contract of purchase, . . . or at all, entered into the possession of the lands of the intervener (Mrs. Francisco) or any part thereof, or into the possession, use or enjoyment of the water represented by her said 61 shares of stock, . . . and never at any time made any improvements or expended any money upon said lands or any part thereof." From the facts found the court drew the conclusions of law that Mrs. Francisco "is estopped to assert the invalidity" of the agreement of August 4, 1924, and that such agreement "was and is a valid, binding and enforceable agreement, and should be specifically performed by the said intervener."

The agreement reads as follows:

"Bishop, Cal., August 4, 1924.
"To the Board of Public Service Commissioners
    "City of Los Angeles,
        "Los Angeles, Calif.
"Gentlemen:
"The price of land of

| | Acres | | |
|---|---|---|---|
| McAvoy & Porter | 160 Acres | 28 McNally | 28 Farmers |
| C. A. Peak | 160 | | 1/32 Fish Slough |
| M. M. Schaffer | 160 | 35 | |
| W. W. Yandell | | | |
| Dell Yandell & Sidney Seymour | 480 | 280 | |
| J. L. Gish | 181 | 205 | |
| F. B. Wayman | 50 | 30 | |
| Carrie Neill | 20 | 15 | |
| Watterson Bros. | 80 | | 1/8 Fish Sl, |
| K. Francisco | 70 | 61 | |

approximately 1361 acres, according to descriptions of documents in my possession, is $206,450.00, together with all water stock or water rights appurtenant to or used in connection with any of said lands.

"All or none of said options to be taken.

"Price subject to acceptance within ten days. Title to be clear with the usual certificates.

"Yours truly,
"M. Q. WATTERSON.

"We, the undersigned, hereby agree to recommend to the Board of Public Service Commissioners of the City of Los Angeles the purchase of the above described properties at the price mentioned above.

"W. B. MATHEWS
"JOHN T. MARTIN."

Subsequently, in due time, the agreement was completed by its acceptance by the defendant, but on the condition that it was to take all of the property of the interveners or none. The defendant did not irrevocably bind itself to take the property of any of the interveners without all thereof until after it had notice that Mrs. Francisco refused to sell her property at the agreed price. The defendant, however, had paid the plaintiffs the full purchase price of their lands and water stock before it had notice of Mrs. Francisco's refusal. Subsequently, with full knowledge of her refusal, the defendant took the lands and water stock of the other interveners at the agreed prices. The plaintiffs and the interveners constituted two separate groups, represented by different persons. An attorney at law, who represented the defendant in the negotiations and who drafted the agreement of August 4, 1924, testified that he did not know "just what kind of authority" Watterson had "except he stated he was authorized" and that he did not know but assumed that Watterson was not the attorney-in-fact of the interveners. M. Q. Watterson, a witness for the defendant, testified that he did not state to any of the defendant's representatives that he "had authority to bind any of these people in a binding agreement." The appellant had no personal negotiations with the representatives of the defendant and made no statements to them concerning the sale of the property or Watterson's authority to act for her. She declined Watterson's request that she sign an option to

sell her property to the defendant. She is bound, if at all, by her oral statement to Watterson that "she would accept the price" of $18,000 for her property and that he "could go ahead and close the deal on it." She knew at that time that the representatives of the defendant had said that it would take none of the property of the interveners without all thereof.

It may be conceded that the evidence supports the finding that appellant verbally authorized the Wattersons to agree in her behalf to sell her property to the defendant. It cannot be held, however, that the appellant is estopped to deny that such authorization was in writing. The representatives of the respondent had convenient and ready means of ascertaining the extent and the nature of the authority which appellant had given the Wattersons and such representatives made no reasonable effort to ascertain the truth. (10 Cal. Jur. 637; *Robbins* v. *Law*, 48 Cal. App. 555, 562 [192 Pac. 118].) The respondent therefore is in the same position as if it had actually known, before accepting Watterson's offer, that his authorization was verbal only.

One relying on equitable estoppel has the burden of showing that he will be injured if the truth be proved. (10 Cal. Jur. 638.) The respondent failed to make any such showing in this case. Considering first the appellant's property alone, there was no injury, because it is alleged and found that the value of the property is less than the agreed price of $18,000. It is not to be inferred that one is injured by a refusal to sell him property for more than it is worth. Considering the properties of the interveners together, it is neither alleged nor found that the respondent paid more than the reasonable value therefor. Neither is it alleged or found that the properties of the plaintiffs are not of the reasonable value paid therefor. It clearly appears from the record in this case that the respondent desired to acquire all of the water rights involved in this action and it is a matter of current state history that the purchase of such property at a reasonable price would be of great benefit to the respondent. Since it does not appear, therefore, that the respondent paid for any of such property a greater sum than the reasonable value thereof, there is no showing of injury. It is true

that the respondent kept the purchase price of the properties in escrow for a few weeks, but it is well settled that the payment of the full purchase price of real property to the seller does not entitle the buyer to specific performance, even though the buyer is compelled to sue for the recovery of the consideration paid. (*Woerner* v. *Woerner*, 171 Cal. 298, 301 [152 Pac. 919].)

Considering the case from a broader standpoint, it must be conceded that, even though the respondent actually knew that Watterson's authorization was oral, yet in a proper case judgment of specific performance would be proper. The legislature has not left the matter in doubt. Section 1741 of the Civil Code provides:

"No agreement for the sale of real property, or of an interest therein, is valid, unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent, thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

"The code section (1741) specifically excepts from the operation of the statute of frauds parol agreements, partly performed, that otherwise would be invalid under subdivision 5 of section 1624. If any other exception were intended, here was the place to make it. The framers of our statute deliberately added one express exception, and we must assume that they intended to leave their work complete." (*Trout* v. *Ogilvie*, 41 Cal. App. 167, 174 [182 Pac. 333, 335].)

"We are led to the general rule of law which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception, must establish it as being within the words as well as within the reason thereof." (*United States* v. *Dickson*, 40 U. S. (15 Pet.) 141 [10 L. Ed. 689].)

Attention has not been called to any decision in this state holding that an oral contract for the sale of real property can be specifically enforced in the absence of a part performance thereof. As shown by the terms of section 1741, the part performance relied on must be part performance of the contract sought to be enforced. As stated in *Knoff* v. *Grace,* 68 Colo. 527 [10 A. L. R. 1492, 190 Pac. 526], "Part performance must be part performance, i. e., it must be the performance of something required by the contract. . . . Doing something because of the contract, or in reliance on it, is not enough." The acts of part performance must be referable alone to the contract. (*Hambey* v. *Wise,* 181 Cal. 286, 291 [184 Pac. 9]; *Blanc* v. *Connor,* 167 Cal. 719, 723 [141 Pac. 217]; *Owens* v. *McNally,* 113 Cal. 444, 451 [33 L. R. A. 369, 45 Pac. 710].) The decisions in this state contain many statements to the effect that an oral contract for the sale of land cannot be specifically enforced in the absence of a showing of part performance thereof, among them the following:

"The contract being oral it was essential that appellant prove sufficient part performance to take it out of the statute of frauds within the meaning of section 1741, Civil Code." (*Wood* v. *Anderson,* 199 Cal. 440, 444 [249 Pac. 862, 864].) Such a contract "could only be taken out of the statute and enforced in equity by reason of part performance." (*Davis* v. *Judson,* 159 Cal. 121, 131 [113 Pac. 147, 152].) "Treating the action as one for the specific performance of a contract relating to real property it was necessary to prove either that the contract was in writing or that it had been partially performed (sec. 1741, Civ. Code)." (*Alman* v. *Rich,* 76 Cal. App. 601, 605 [245 Pac. 439, 441]. See, also, *Sampson* v. *Draeger,* 88 Cal. App. 105 [262 Pac. 781]; *Viau* v. *Viau,* 57 Cal. App. 66, 71 [207 Pac. 39]; *Hines* v. *Copeland,* 23 Cal. App. 36, 42 [136 Pac. 728].) "The case is reduced by the findings to an action to enforce a parol contract to convey real estate. Such an action is maintainable only where there has been a part performance sufficient to take the agreement out of the statute of frauds." (*Woerner* v. *Woerner, supra.*) The facts in that case were much stronger in favor of the party claiming an estoppel than in this.

Respondent relies on *Seymour* v. *Oelrichs*, 156 Cal. 782 [134 Am. St. Rep. 154, 106 Pac. 88], and other analogous cases, but the oral contract in that case did not involve the transfer of real estate and, therefore, section 1741 of the Civil Code was not applicable thereto.

The judgment is reversed.

Thompson (R. L.), J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 14, 1929, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 13, 1930.

All the Justices concurred.