AH PAH REDWOOD CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50695. Filed September 28, 1956.

*James C. Dezendorf, Esq.*, for the petitioner.
*Wendell M. Basye, Esq.*, for the respondent.

## OPINION.

VAN FOSSAN, *Judge:* The first issue is whether the amounts received by petitioner in 1948 and 1949 from Coast for timber cut in those years by the latter from the Sage Tract are properly taxable as capital gains, as urged by petitioner, or as ordinary income, as determined by respondent. The statutes involved are sections 117 (j) (1) and 117 (k) (2) of the Internal Revenue Code of 1939, as amended, the pertinent provisions of both of which are set forth below.[2] It is petitioner's position that the only question to be resolved under this issue is whether or not its oral arrangement with Coast, whereby Coast commenced logging operations on the Sage Tract, as indicated in our findings above, in October 1947, shortly after petitioner's acquisition thereof, from which logging operations the amounts in dispute were received, constituted a "disposal" by petitioner of all of the timber standing thereon within the meaning of section 117 (k) (2).

In line with this view, petitioner makes the argument on brief that such oral arrangement was ineffective to pass title to all of the standing

---

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not * * * (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable. * * *

\* \* \* \* \* \* \*

(k) GAIN OR LOSS UPON THE CUTTING OF TIMBER.—

\* \* \* \* \* \* \*

(2) In the case of the disposal of timber (held for more than six months prior to such disposal) by the owner thereof under any form or type of contract by virtue of which the owner retains an economic interest in such timber, the difference between the amount received for such timber and the adjusted depletion basis thereof shall be considered as though it were a gain or loss, as the case may be, upon the sale of such timber.

timber in question in October 1947, the date the oral agreement was made, because of the California Statute of Frauds (Cal. Civ. Code Ann. sec. 1091 (West)); *Anderson* v. *Palladine,* 178 P. 553; see, also, 34 Am. Jur. 498), and that it therefore could not and did not constitute a "disposal" of such timber within the ambit of the cited statute at any time prior to the execution of the written agreement in 1950. Further, petitioner advances the theory that while its oral agreement with Coast was not effective as a contract to sell standing timber, it did constitute a license to cut, which license ripened into a contract for the sale of logs upon the severance of each individual tree.

Whether or not petitioner's theory be valid, its application will not constitute a disposition of the issue framed in the pleadings. Thus to narrow the issue is to make the unwarranted assumption that the timber involved in the transaction at issue constituted a capital asset to petitioner at the time of such transaction, within the definition contained in section 117 (a) (1) of the Internal Revenue Code of 1939,[3] or property used in petitioner's trade or business within the meaning of section 117 (j) (1), *supra.* In this connection, respondent makes the point, which we feel to be well taken, that petitioner at no time engaged in any logging activities, but, rather, merely sold the Sage timber to others under arrangements whereby the vendees would do the logging; that these sales of timber were the only business activity entered into by petitioner; that it is thus to be considered as having been engaged in the trade or business of selling timber; and that the timber in dispute, whether or not it was standing, was held for sale to customers in the ordinary course of such business.

The facts found on this record lead to the conclusion that petitioner was engaged in the trade or business of selling timber and that the timber in controversy was held for sale to customers in the ordinary course thereof. Petitioner does not deny the nature of its business activity and the purpose for which the Sage timber was held. Nor does it claim that the timber comes within the definition of section 117 (a) (1), *supra.* In fact, petitioner bases its entire case upon the applicability of section 117 (j). In this connection, petitioner's position is summed up in its statement on brief that section 117 (j) "includes timber to which Section 117 (k) (2) is applicable and allows capital gain treatment of income therefrom *without regard to the nature of the taxpayer's business or the purpose for which the timber is held.*" (Emphasis supplied.)

---

[3] SEC. 117. CAPITAL GAINS AND LOSSES.

    (a) DEFINITION.—As used in this chapter—

        (1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *

.The view thus expressed is in direct conflict with the plain wording of the statute relied upon. Section 117 (j), by its own language, specifically excludes from its operation all property held for sale to customers in the ordinary course of business. This being true, the gains derived from the sale of the Sage timber, regardless of the time of such sale, would not qualify for capital gains treatment under either section 117 (a) (1) or section 117 (j).

While there is no direct evidence of the precise terms of the oral cutting contract entered into between petitioner and Coast, such contract, for aught that is shown, looked immediately to the severance and removal of all timber standing upon the Sage Tract. Under the provisions of the Uniform Sales Act which was enacted in California in 1931 (See title 1, Sales of Goods, Stats. 1931, ch. 1070, p. 2234, sec. 1; Cal. Civ. Code Ann. secs. 1721–1800 (West)), the sale of "things attached to or forming a part of the land," which category includes *fructus naturales*, or standing timber, pursuant to a contract according to the terms of which the trees are to be severed and removed as soon as possible, is a sale of goods, i.·e., personalty, and not of an interest in land. See sec. 1796, *supra;* Brown, Personal Property sec. 164 (2d ed.). Thus it is, that, in our opinion, petitioner's cutting contract with Coast was fully enforceable by the latter in the California courts and not invalid for noncompliance with the Statute of Frauds. See sec. 1091, *supra;* see, also, secs. 1723, 1724, *supra.* By being allowed access to the Sage Tract and by beginning its logging operations, Coast partly performed on its contract with petitioner and by such partial performance removed the contract from the application of the Statute of Frauds. *McGinn* v. *Willey,* 24 Cal. App. 303, 141 Pac. 49; cf. *Forbes* v. *City of Los Angeles,* 101 Cal. App. 781, 282 Pac. 528; 101 A. L. R. 923; see sec. 1724, *supra.*

Accordingly, it is our view that petitioner's oral agreement with Coast, under either rationale, constituted a. disposition of the Sage timber within 6 months of the acquisition thereof in direct opposition to the specific statutory language defining capital gains. See sec. 117 (k) (2), *supra,* and footnote 2.

The recent case, *L. D. Wilson,* 26 T. C. 474, is clearly distinguishable from that now before us. There the issues framed were whether the partnership, of which the petitioners therein were members, could be considered the "owner" of the timber in question within the intendment of section 117 (k) (2), *supra,* and, if so, whether the timber cutting arrangement involved was sufficient to constitute a "disposal" of the timber within the scope of the statute involved. We answered both questions in the affirmative.

In the instant case, albeit the existing oral cutting arrangement between petitioner and Coast constitutes a valid cutting contract for

the disposition of the Sage timber, such contract does not meet the prerequisites of a "disposal" within the statutory purview, in that at the time it was entered into, petitioner had been the owner of the Sage timber for a period of less than 6 months. Nor, contrary to the instant case, could the partnership in *L. D. Wilson, supra,* on the facts there present, be considered as having been in the trade or business of selling stumpage to customers in the ordinary course of such business.

In view of all the foregoing, respondent's determination on this point is affirmed.

The second issue involves petitioner's allegation that an erroneous basis for depletion was applied by both petitioner and the respondent to timber cut from its property in the taxable years.

The facts adduced herein show that the amount of recoverable units of timber standing on the Sage Tract was substantially less than the original estimate which was used in computing petitioner's depletion allowance at $3.941566 per thousand board feet. Petitioner first became aware of the error in 1952 and upon an actual cruise made shortly following the cessation of logging activities in November 1954, the amount of fall-down was ascertained to be approximately 48 per cent.

Petitioner here seeks revision of its depletion allowance for the years 1948 and 1949, citing section 23 (m), Internal Revenue Code of 1939,[4] and our opinion in *Marion A. Burt Beck,* 15 T. C. 642, affd. 194 F. 2d 537, as authorizing such adjustment. Petitioner reasons that since the amount of fall-down in its timber resources was readily ascertainable at all times during the taxable years, a revision of its depletion allowance should be made effective for those years. We do not agree.

The *Beck* case does not stand for the proposition advanced by the petitioner. There the taxpayer was contesting a downward revision by respondent of her depletion allowance for the years there involved. However, the record made in that proceeding was adequate to warrant our finding as a fact that the taxpayer on the basis of facts known and reasonably ascertainable in the taxable years had discovered the discrepancy between the amount of units of ore actually recoverable and the prior estimates thereof. This being true, we sustained respondent's action, saying, in part:

---

[4] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\*     \*     \*     \*     \*     \*     \*

(m) DEPLETION.—\* \* \* In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such revised estimate. \* \* \*

The statute does not imply that the party to whom it would be an immediate tax-wise advantage to suppress the information of a need for adjustment, has any privilege not to come forward and make the necessary correction in the return. * * *

The evidence here affords us no basis for making any finding that petitioner at any time in the taxable years knew or even suspected that its prior estimate of standing timber was erroneous. Albeit such error was readily ascertainable, it was not in fact ascertained at any time within either of the taxable years. In our view, therefore, the revision sought by petitioner does not qualify under the statutory provision that the allowance "for subsequent taxable years shall be based upon such revised estimate." Cf. *Petit Anse Co.* v. *Commissioner*, 155 F. 2d 797, certiorari denied 329 U. S. 732. Respondent's determination on this issue is approved.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

MURDOCK, *J.*, dissenting: The legislative history of section 117 (k) indicates clearly that Congress was trying to give capital gains treatment to timber owners when they disposed of their timber. See *Helga Carlen*, 20 T. C. 573. This taxpayer seems to come precisely within the terms of section 117 (k) (2) and, therefore, is entitled to its benefits.

I also have doubt on the depletion issue. The facts in regard to the true content were reasonably ascertainable during the taxable year, and under such circumstances a reasonable allowance for depletion could be based on such ascertainable facts.