[Civ. No. 3374.   Third Appellate District.—December 29, 1927.]

STEWART B. SAMPSON, Respondent, v. OTTO DRAEGER, Appellant.

F. E. Borton and James Petrini for Appellant.

Wiley & Harvey for Respondent.

PRESTON, J., *pro tem.*—This is an appeal by the defendant Otto Draeger from a judgment entered against him in the sum of $2,700, in an action to enforce specific performance of a contract for the sale of real estate.

The facts are not in dispute and can thus be briefly stated: Alex Kirkpatrick and others were the owners of 160 acres of land in Kern County, California, the title to which stood in the name of Kirkpatrick, as trustee. W. A. Sampson was a duly licensed real estate broker, residing near the land. On February 27, 1920, W. A. Sampson wrote a letter to Kirkpatrick, who resided in Los Angeles, California, and said in part: "I have good reason to believe that if you and your associates will promptly give me authority to sell the West half of Section 27, at $80.00 per acre, I can line up local parties to take the land on terms. . . . (Here follows terms.) In the event the foregoing is approved, and I line up responsible parties to take over the land and make improvements as stipulated, I will expect five per cent commission. . . . " To this letter Kirkpatrick replied: "Replying to your favor of February 27th, in which you ask for authority to sell the West half of 27 on terms stated, will say we will sell on terms for you, viz.: A contract of sale for $80.00 per acre land clear. . . . "

Kirkpatrick made no mention of the five per cent commission demanded by Sampson. There were no other writings between these parties, but Kirkpatrick later came to the land and talked the matter over with Mr. W. A. Sampson, and it was finally agreed that Sampson was to sell the land on the basis of $80 per acre net to Kirkpatrick, one-fourth to be cash. Pursuant to this arrangement, Mr. Sampson advertised all the lands belonging to Kirkpatrick

and his associates for sale at public auction. The auction sale was had, but this particular piece of land was not sold. Thereafter, and on or about March 22, 1920, defendant Otto Draeger and Sampson entered into negotiations relative to the purchase and sale of said land, which resulted in defendant agreeing to buy the land for $100 per acre and paying Sampson $500, and Sampson giving defendant a receipt in the words and figures as follows:

"Received,—Wasco, Cal. March 22, 1920, of Otto Draeger of Vacaville, Cal., check for Five Hundred Dollars on account and as first payment on purchase of 160 acres of the West half of Section 27, Township 27 South, Range 24 East, M. D. B. & M. (definite legal description to be supplied) at $100 per acre, (Sixteen Thousand Dollars) with a further cash payment of Three Thousand Five Hundred Dollars when Certificate of Title showing land clear of encumbrance is ready for delivery, and deed for same. The balance of purchase price to be divided, $4000 in three years and $8000 in five years, with privilege of partial payments of $1000 in advance of date due.

"W. A. SAMPSON."

It will be noted that the defendant Draeger did not sign the foregoing receipt, or any writing whatever relative to the land, and the contract, as far as he was concerned, was entirely oral. At the time defendant received said receipt from Sampson, he did not know that Kirkpatrick and his associates owned the land. Defendant negotiated with Sampson under the belief that the land belonged to Sampson.

Within two weeks after the payment of the $500 and the giving of the receipt above set forth, W. A. Sampson died. After his death defendant paid to Kirkpatrick the full amount of $80 per acre for the land and obtained from him a deed to said land, and, after receiving the deed from Kirkpatrick, took possession of the property. The estate of W. A. Sampson was probated and all his rights under the contract with the defendant were distributed to the plaintiff.

Upon these facts the trial court found that the plaintiff, as successor in interest of W. A. Sampson, was entitled to judgment against the defendant for the sum of $2,700, the balance of the purchase price of said land under the

contract with W. A. Sampson, and rendered judgment accordingly.

Many contentions are made for a reversal of the judgment. It seems to us, however, that only two questions need be determined: First, did W. A. Sampson and Otto Draeger enter into a valid and enforceable contract of sale and purchase? Or, to state it another way, did W. A. Sampson enter into such a contract with Otto Draeger that could be specifically enforced against Otto Draeger? Second, was there a part performance by Otto Draeger, sufficient to bind him, notwithstanding his failure to sign the contract?

We think both these questions must be answered in the negative.

Section 1741 of the Civil Code provides: "No agreement for the sale of real property, or of an interest therein, is valid, unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent, thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof."

The party to be charged in this action was the defendant Otto Draeger, and his signature was absolutely essential to make an enforceable contract against him, except where his conduct has amounted to such a performance, or part performance, of the contract as to relieve the contract of the necessity of his signature. (*Harper* v. *Goldschmidt*, 156 Cal. 245 [134 Am. St. Rep. 124, 28 L. R. A. (N. S.) 689, 104 Pac. 451].) Therefore, unless the defendant did something to relieve the contract from the necessity of his signature, it cannot be enforced against him. In the case at bar the defendant Draeger paid $500 to W. A. Sampson and took Sampson's receipt therefor, but did not go into possession of the property, or exercise any dominion or control over it, until after he had paid Kirkpatrick $80 an acre for the land and had received a deed from him. This is wholly insufficient to show a part performance on the part of Draeger.

In the case of *Harper* v. *Goldschmidt, supra*, the court said: "But where, as in this case, the contract is wholly executory, and the evidence of it amounts to nothing more

than a receipt signed by the vendor, and the alleged part performance is nothing more than the payment of a small amount of money by the non-signing vendee, and the acceptance of a receipt therefor, no case can be found which holds such to be sufficient part performance to relieve from the statute of frauds. . . . The statute is satisfied and the non-signing defendant is held where the contract has been executed upon the part of the vendor, or lessor, by the giving of a deed or lease, which has been accepted by the vendee or lessee. . . . In such a case the contract has been wholly executed by the one party, and the acceptance of the deed or lease is consistently held to be a sufficient part performance to charge the other party. So, also, in case of executory contracts, where the non-signing vendee enters into possession, or exercises dominion in other ways over the land, it is held that this amounts to such a part performance as will bind the non-signing vendee. But where the act of the vendee is no more than the payment of a small amount of the purchase price, and the acceptance of a receipt for that amount, leaving all of the rest of the contract executory, both upon his part and upon the part of the vendor, no case has been pointed out which holds such acts to amount to a part performance which will bind the vendee. 'His refusal to complete the contract after paying part of the purchase money is no fraud upon the seller but his loss.' ''

Therefore, if we admit that W. A. Sampson was the vendor, and the defendant Otto Draeger the vendee, yet, under the undisputed facts in this case, there was no such part performance of the contract on the part of the defendant as the law contemplates.

Plaintiff, while admitting that the contract, as far as defendant is concerned, was oral, nevertheless contends that defendant obtained and is enjoying the full fruits thereof, and cannot escape liability by pleading the statute of frauds. We find no merit in this contention. Defendant agreed orally to pay W. A. Sampson $100 per acre for the land and actually paid him $500. Sampson did not own the land. Thereafter defendant bought the *same land* from the owners for $80 per acre and received no credit whatever for the $500 he had paid to W. A. Sampson. In fact, the owners, at the time they sold to defendant, knew nothing of

the negotiations carried on by W. A. Sampson; therefore, the contract that defendant entered into with the owners of the land was an entirely different contract than the one made with W. A. Sampson. Defendant could have bought the land from the owners at any time for $80 per acre; therefore, under these facts, how can it be contended that defendant obtained the fruits of the contract entered into with W. A. Sampson?

The whole difficulty in respondent's case is that W. A. Sampson *did not take a binding and enforceable contract of purchase from the defendant, and the defendant did not perform the contract so as to take it out of the statute of frauds.*

If it be conceded that the plaintiff's action is one to collect a commission from the defendant, still he cannot maintain the action for the reason that there is no note or memorandum of any kind signed by the defendant agreeing to pay a commission to W. A. Sampson.

From the view we have taken of the case, the other points raised become wholly immaterial. We find no basis upon which the judgment can be sustained.

The judgment is reversed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 28, 1928.