Ah Pah Redwood Co. v. Commissioner.
Ah Pah Redwood Co. v. Commissioner
Docket No. 50695.
United States Tax Court
T.C. Memo 1959-44; 1959 Tax Ct. Memo LEXIS 210; 18 T.C.M. (CCH) 202; T.C.M. (RIA) 59044; February 27, 1959
*210 Held, on the facts presently before us petitioner did not hold certain timber primarily for sale to customers in the ordinary course of business. Held, further, amounts received by petitioner in 1948 and 1949 from Coast Redwood Co. for timber cut by the latter in those years from the property of petitioner are properly taxable as capital gains on sale of property held for more than six months. James C. Dezendorf, Esq., and Marshall C. Cheney, Jr., Esq., for the petitioner. John D. Picco, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion This proceeding involves Federal income taxes for the years 1948 and 1949 in the aggregate amount of $38,304.21. In an opinion promulgated September 28, 1956, this Court, on the facts then before us, held that petitioner was not entitled to capital gains treatment under section 117(k)(2) of the Internal Revenue Code of 1939[1] on amounts received by petitioner in 1948 and 1949 from Coast Redwood Co. for timber cut by it from the property of petitioner. Ah Pah Redwood Co., 26 T.C. 1197 (1956). *211 Petitioner appealed, and on December 13, 1957, the Court of Appeals for the Ninth Circuit issued its opinion, affirming our holding as to allowable depletion and that petitioner was not entitled to capital gains treatment under section 117(k)(2). Ah Pah Redwood Co. v. Commissioner, 251 Fed. (2d) 163. The appellate court noted, however, that in second supplemental briefs, filed at the request of the court, both parties had called attention to the fact that capital gains treatment is available for absolute sales of timber under either section 117(a)(1) or 117(j)(1), provided, that the six-month-holding-period requirement is met, and that the timber was not held primarily for sale to customers in the ordinary course of trade or business. The court concluded that the only factor preventing the application of these last-mentioned Code sections to the case at bar was that petitioner may have held the timber primarily for sale to customers in the ordinary course of its trade or business. The court then remanded the case for further proceedings and a determination as to whether petitioner was entitled to capital gains treatment under section 117(a)(1) or (j)(1). The only *212 question presently before us is whether petitioner held the timber primarily for sale to customers in the ordinary course of its trade or business. A new stipulation of facts with accompanying exhibits, filed by the parties pursuant to a motion granted by this Court on July 11, 1958, has clarified the facts in issue. In this situation a new or revised findings of fact is required. Findings of Fact The petitioner, a California corporation, was organized on June 23, 1947. The returns for the periods here involved were filed with the collector of internal revenue for the district of Oregon. Petitioner used the calendar year for reporting its income. The articles of incorporation reveal that petitioner was formed, inter alia, to engage in the business of buying, selling, and owning timber and of carrying on a general logging and lumber business. This purpose included the manufacturing, selling, processing, and shipping of lumber and related products; the construction, ownership, and operation of sawmills, tanbark mills, and pulp mills, as well as tramroads, railroads, and steamships; and the acquisition, holding, improving, encumbering, developing, and exchanging of real and personal *213 property of every kind. The capital stock of petitioner was originally owned by A. K. Wilson, who was its president from its inception and during the taxable years. On September 29, 1947, all of petitioner's outstanding capital stock was acquired by International Pacific Pulp & Paper Company, hereinafter referred to as International, an Oregon corporation which, during the years involved, was actively engaged in a substantial sawmill and lumber business. Its plant was located in Portland, Oregon. Wilson owned one share of the common and five shares of the preferred stock of International. He was its president during the taxable years in question. The majority of International's stock was owned by Union Bond & Trust Company. Coast Redwood Co., hereinafter called Coast, was incorporated under the laws of California in 1945 for the purpose of engaging in the business of logging and manufacturing lumber. During the years in question its sawmill was located in Arcata, Humboldt County, California. The capital stock of Coast was owned by Wilson and members of his family. Wilson has been its president since its inception. Union Bond & Trust Company, hereinafter referred to as Union, *214 is an Oregon corporation. Its stock is owned by Union Mortgage Company. Wilson has been its president since Union Mortgage Company acquired the capital stock of Union, a period which includes the tax years in question. Wilson owns 29 per cent of the capital stock of Union Mortgage Company. On December 13, 1946, Sage Land & Lumber Company, Inc., as seller, and Union, as buyer, entered into a purchase agreement (hereinafter referred to as the Sage Agreement or Sage B Agreement) covering certain redwood timberlands in northern California. Subsequently, Union transferred its right, title, and interest under the Sage Agreement to International. On September 29, 1947, International reassigned its interest in the Sage Agreement to Union which in turn assigned and transferred it to petitioner. The minutes of a special meeting of the board of directors of International called on September 29, 1947, include the following paragraph: "The President and Chairman of the Board, Mr. A. K. Wilson, announced that the Ah Pah Redwood Co. was ready, willing and able to purchase the Sage 'B' agreement dated December 13, 1946, between the Sage Land & Lumber Company, Inc., and Union Bond & Trust Company, *215 which covers 6757.90 acres of land in Northern Humboldt County, California, for the sum of $446,840.99 for the equity of this Corporation in said Sage 'B' agreement. The purchase price of said equity is to be paid $99,500.00 cash as the down payment with a note of the Ah Pah Redwood Co. for the balance of $347,340.90. The Directors were reminded that as of this morning the Ah Pah Redwood Co. was a wholly owned subsidiary of this Corporation, and that any profit realized from the Sage 'B' agreement would work to the benefit of this Corporation. A statement was made that the note referred to in this paragraph was not the type of note that was to be guaranteed by A. K. Wilson, and would not be guaranteed by A. K. Wilson, but would be the sole obligation of Ah Pah Redwood Co." On the same day, September 29, 1947, petitioner agreed to allow Coast to cut timber on the Sage lands and pay $5 per thousand feet as removed. This arrangement was an oral or implied contract. The following schedule shows the monthly transactions between petitioner and Coast involving Sage B timber during the years 1948 and 1949: Board
Feet of
Sales
1948
Timber Sold
Price
January
796,232
$ 3,981.16
February
1,057,086
5,285.43
March
2,066,124
10,330.62
April
1,650,335
8,251.68
May
1,508,049
7,540.25
June
1,615,717
8,078.58
July
1,100,406
5,502.03
August
2,206,344
11,031.72
September
1,529,882
7,649.41
October
234,493
1,172.47
November
33,624
168.12
December
271,485
1,357.43
14,069,777
$70,348.90
1949
January
0
0
February
13,931
$ 69.65
March
1,223,043
6,115.22
April
1,645,403
8,227.02
May
1,494,205
7,471.02
June
2,123,238
10,616.19
July
1,383,242
6,916.21
August
2,403,066
12,973.82
September
1,763,486
8,817.43
October
1,503,354
7,516.77
November
1,789,906
8,949.53
December
1,241,579
6,207.90
16,584,453
$83,880.76
*216 In the taxable years 1948 and 1949 petitioner reported its income from the sales of timber to Coast as long-term capital gain. On February 19, 1948, petitioner sold 79,752,000 board feet of the Sage timber to Walter F. Foster at $5 per thousand feet. On May 17, 1948, petitioner sold an additional 91,247,000 board feet of the Sage timber to Foster. These sales were made pursuant to a deferred payment plan. Foster assigned his interest in the Sage timber to Big Tree Timber Company. Subsequently, the buyer, Big Tree Timber Company, defaulted in the payments, the contracts of sale were cancelled, and the timber was repossessed by petitioner. On January 9, 1950, petitioner entered into a formal written agreement with Coast for the sale of the Sage timber. Petitioner sold 18,575,000 board feet of Sage timber to A. K. Wilson Lumber Company in 1950 and 15,308,000 board feet in 1951. The latter company was a California corporation formed for the purpose of manufacturing and selling lumber. The company mill is located at Los Angeles, California. Its capital stock is owned by Wilson and members of his family, and Wilson was its president during the tax years in question. On May 30, 1950, Coast *217 sold its interest as buyer under the agreement of January 9, 1950, to Union, reserving the right to continue logging the Sage timber at the rate of $5 per thousand board feet. In 1946 and 1947, prior to the acquisition by the petitioner of the Sage timber, International sold 16,022,060 board feet of the Sage timber to Coast. Petitioner did not advertise the Sage timber for sale. It did not employ salesmen and it did not solicit offers from buyers. Nor did petitioner log or mill the Sage timber. It had no logging equipment and no sawmill and did not log timber or manufacture lumber during the taxable years. Throughout the years 1948 and 1949 petitioner did not hold the Sage timber primarily for sale to customers in the ordinary course of its trade or business. Opinion VAN FOSSAN, Judge: This case was remanded to us to determine whether petitioner is entitled to capital gains treatment under section 117(a)(1) or (j)(1) of the Internal Revenue Code of 1939. [2] That question turns on whether or not petitioner held the timber in the Sage B Agreement primarily for sale to customers in the ordinary course of its trade or business. *218 It will be noted that the question before us is purely a question of fact. It will be noted further that we have made the ultimate finding of fact that throughout the years in question petitioner did not hold the Sage timber primarily for sale to customers in the ordinary course of its trade or business. This holding represents our conclusion after consideration of the entire record and is dispositive of the case. It follows that petitioner is entitled to use the capital gains method of computing its taxable income as to income arising from timber sold during the taxable years 1948 and 1949 and after expiration of the statutory period. Decision will be entered under Rule 50. Footnotes
1. All Code section numbers refer to the Internal Revenue Code of 1939, as amended.↩
2. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer; * * *
(j) Gains and Losses From Involuntary Conversion and From the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of Property Used in the Trade or Business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k)(1) or (2) is applicable. Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition.↩