JAMES A. CARPENTER AND CLORIS A. CARPENTER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT. RICHARD E. NEALY AND VERDA NEALY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 79509, 79510. Filed July 31, 1961.

*Charles P. Duffy, Esq.*, for the petitioners.
*John D. Picco, Esq.*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in income tax against petitioners James A. Carpenter and Cloris A. Carpenter in the amounts of $9,297.02, $17,001.46, and $12,935.42 for the years 1954, 1955, and 1956, respectively, and against petitioners Richard E. Nealy and Verda Nealy in the amounts of $22,601.16, $39,827.06, and $27,628.26 for the years 1954, 1955, and 1956, respectively.

The sole issue for decision is whether a partnership composed of James A. Carpenter and Richard E. Nealy had a contract right to cut certain timber which it had held for a period of more than 6 months before the beginning of each of the taxable years, thus entitling petitioners to treat the proceeds from the cutting of the timber during each of the years 1954, 1955, and 1956 in accordance with the provisions of section 631(a) of the Internal Revenue Code of 1954. Respondent determined in the case of each petitioner for each of the taxable years involved that the cutting of the timber did not qualify for capital gains treatment within the provisions of section 631(a) or any other section of the Internal Revenue Code of 1954.

FINDINGS OF FACT.

Petitioners James A. Carpenter and Cloris A. Carpenter are husband and wife residing at Corvallis, Oregon. They filed joint income tax returns for the years 1954 and 1955 with the district director of internal revenue at San Francisco, California, and a joint income tax return for 1956 with the district director of internal revenue at Los Angeles, California.

Petitioners Richard E. Nealy and Verda Nealy are husband and wife residing at Grants Pass, Oregon. They filed joint income tax returns for the years 1954, 1955, and 1956 with the district director of internal revenue for the district of Oregon.

Commencing April 1, 1952, and continuing through the taxable years here involved, petitioners Richard A. Nealy (hereinafter referred to as Nealy) and James A. Carpenter (hereinafter referred to as Carpenter) were the sole members of Nealy Logging Company, a partnership, Nealy having a two-thirds interest therein, and Carpenter, a one-third interest.

The partnership filed a partnership return of income for the year 1954 with the district director of internal revenue at Portland, Oregon, and partnership returns of income for the years 1955 and 1956 with the district director of internal revenue at San Francisco, California.

Nealy Logging Company (hereinafter referred to as the partnership) kept its books and records on an accrual method of accounting. Its business was logging of timber and selling the logs produced therefrom on the open market and its principal place of business was Gasquet, California.

In 1952 Nealy Logging Company became interested in the merchantable timber located upon certain real property in Del Norte County, California, which will hereinafter be referred to as the John Paul tract. The John Paul tract had belonged to the John Paul Lumber Company, a Wisconsin corporation, for many years. The corporation was inactive from 1930 to about 1947. In 1944 certain individuals became aware that the John Paul tract had increased in value and unless redeemed might be sold for taxes. One Samuel Agnew furnished the funds with which the taxes were paid and secured deeds to the timberlands from certain individuals who purported to act on behalf of the John Paul Lumber Company. In 1947 the John Paul Lumber Company brought a quiet title action against Agnew in the California Superior Court. The John Paul Lumber Company prevailed in the Superior Court pursuant to decision entered June 27, 1952. Agnew appealed to the District Court of Appeals, Third District, California. On May 28, 1954, the appellate court affirmed the decision of the lower court, the appellate court decision being reported as *John Paul Lumber Co.* v. *Agnew*, 270 P. 2d 1044

(1954). Agnew was unsuccessful in seeking review of this decision by the California Supreme Court and the litigation ended.

At about the time the partnership was formed Carpenter and Nealy had talked to one Everett Skeeter about a supposed contract that the John Paul Lumber Company had with O. O. Barker, involving certain interests in the John Paul tract. The partnership made an agreement with Skeeter and James C. Rodger acting under a power of attorney for O. O. Barker, for the cutting of timber on the John Paul tract sometime in August 1952 and shortly thereafter commenced logging operations on the tract.

After the partnership had been logging the tract for a few days an action was brought against them by Ted R. Webb, Fred Linkhart, and the John Paul Lumber Company to enjoin their cutting timber on the John Paul tract and the court granted the injunction in September 1952.

Under date of May 22, 1951, the John Paul Lumber Company entered into a written agreement entitled "Timber Sales Contract and Option Agreement" with Ted R. Webb. This agreement provided for the sale to Webb, immediately upon the execution of the contract, of the merchantable timber located on certain lands in Del Norte County, California, other than the John Paul tract here involved and in addition thereto granted Webb an option to purchase the timber located on the John Paul tract. The agreement of May 22, 1951, between John Paul Lumber Company and Ted R. Webb provided, in part, as follows:

THIS AGREEMENT made by and between TED R. WEBB of O'Brien, Oregon, hereinafter called BUYER, and JOHN PAUL LUMBER COMPANY, a Wisconsin corporation, authorized to do business in the State of California, hereinafter called SELLER,

WITNESSETH:

1. Buyer agrees to buy and Seller agrees to sell to Buyer all merchantable timber located upon the following described real property in Del Norte County, California:

The Southeast quarter of the Southeast quarter of Section 24 and the South half of the Northwest quarter and the North half of the Southwest quarter and the Southwest quarter of the Southeast quarter of Section 25, Township 17 North, Range 3 East.

2. The total purchase price for said timber shall be $6.00 per thousand board feet, of which sum the amount of $12,500.00 shall be paid to Seller upon the execution of this agreement. The balance of said purchase price shall be paid by the Buyer to the Seller in monthly installments as said timber is cut and removed, payable on the 15th day of each month for all timber cut and removed during the preceding month. Payment shall be made by cashier's check mailed to Seller at 701 Citizens Building, West Palm Beach, Florida.

\*     \*     \*     \*     \*     \*     \*

4. Buyer agrees to either cut and remove or have cruised and pay for all of said merchantable timber within a period of two (2) years from the date hereof, except that in the event Buyer exercises his option hereinafter granted, then

this time limit shall not apply. Standing timber paid for may remain on the premises no later than May 21, 1961. Any taxes levied against the timber separate from the land shall be paid by Buyer.

5. The Seller agrees to furnish to Buyer a title insurance policy in the usual form in the amount of $10,000.00, showing title to said real estate to be vested in Seller and in good marketable condition. Said policy of title insurance shall be at Buyer's expense.

6. The Buyer shall not create nor permit to be created any lien upon the property of Seller and the Seller reserves the right to post notices of non-responsibility upon said premises. Buyer shall carry adequate compensation and liability insurance at his own expense for the protection of the Seller and agrees to hold Seller free and harmless from any liability arising because of Buyer's operations on the premises.

\* \* \* \* \* \* \*

8. In further consideration of the mutual covenants herein contained and the purchase of said timber by Buyer, Seller does hereby grant unto Buyer an option to purchase from Seller all of the remaining timber upon all lands owned by Seller in Del Norte County, California. The parties hereto recognize that title to said real property is presently in litigation and that this option must be exercised by Buyer at any time prior to a day which shall be sixty (60) days after Buyer is notified by Seller in writing that Seller is able to furnish good merchantable title to the said timber, said merchantable title to be evidenced by a title report or other evidence of title acceptable to Buyer. If Buyer requires a policy of title insurance it shall be at the expense of Buyer.

9. Said option shall be exercised so as to constitute a binding contract by Buyer's giving Seller written notice of his intention to exercise said option, by registered mail, accompanied by a cashier's check in the amount of $25,000.00.

10. In the event Buyer exercises his option in the manner above described then the terms of this contract shall be extended automatically to the timber covered by said option and the provisions of the preceding paragraphs hereof as to the purchase price of $6.00 per thousand board feet, as to the time, place and method of payment and in all other respects shall be extended to include said timber, subject to the next succeeding paragraph.

11. If Buyer exercises said option it is understood that he must exercise it to purchase as one lot all of the said timber covered by this option. In the event that the present quiet title suit determines that Seller owns only a portion of the land described in said action, then this option shall include that portion.

In the event said option is exercised by Buyer the payment of $25,000.00 shall be a payment in advance on the purchase price of said timber. Buyer covenants in said event that he will purchase and pay for a minimum of at least 10,000,000 board feet per year.

12. Buyer shall have the right to enter upon any lands of Seller in order to remove and log said timber.

\* \* \* \* \* \* \*

14. This agreement shall be binding upon the heirs and assigns of all parties hereto. Time is of the essence hereof. Performance on the part of Buyer of each and every covenant by him to be performed hereunder shall be a condition precedent to performance hereof by the Seller. In the event that Buyer is in default of any of the covenants and conditions by him to be performed hereunder, and such default is not remedied within a period of thirty (30) days after Seller's giving Buyer written notice thereof, then Buyer shall forfeit all of his rights hereunder and Seller shall be entitled to retain any and all payments theretofore made by Buyer under the terms of this agreement as

additional consideration for the granting of this option. It is understood that this contract is an entire contract and not severable.

IN WITNESS WHEREOF, the parties hereto have executed this agreement at Auburn, California, this 22nd day of May, 1951.

Webb assigned to Fred Linkhart and S. H. & W. Lumber Company, an Oregon corporation, a one-third interest each in the option to purchase the timber on the John Paul tract, which he had under his agreement with John Paul Lumber Company dated May 22, 1951. After the partnership had been enjoined from logging operations on the John Paul tract, Nealy and Carpenter began negotiations with Webb, and under date of January 21, 1953, the partnership and Webb, Linkhart, and S. H. & W. Lumber Company entered into an agreement which provided, in part, as follows:

THIS AGREEMENT, made and entered into this 21st day of January, 1953, by and between TED R. WEBB, FRED M. LINKHART and S. H. & W. LUMBER COMPANY, an Oregon corporation, hereinafter known as the Sellers, and RICHARD E. NEALY and JAMES A. CARPENTER, doing business under the assumed name of Nealy Logging Company, hereinafter known as the Buyers, WITNESSETH:

WHEREAS, the Sellers have an option dated May 22, 1951, with the John Paul Lumber Company, a Wisconsin corporation, for the purchase of certain timber in Del Norte County, California, a copy of which option is attached hereto marked "Exhibit A" and hereby made a part hereof; and

WHEREAS, the Sellers herein are the sole owners and holders of said option; and

WHEREAS, the Buyers herein are also asserting certain claims to all or a portion of the timber covered by said option, and certain litigation is now pending in the State of California involving the parties to this agreement, as well as other parties, and in which litigation it is sought to settle and determine the various questions relative to the title to said timber; and

WHEREAS, the parties to this agreement represent conflicting claims to said timber but have heretofore agreed upon a complete and final settlement of their respective and conflicting differences and claims and desire to reduce the same to writing,

Now, THEREFORE, for and in consideration of the foregoing, the mutual promises and agreements herein contained and the payments to be made by the Buyers, the Sellers do hereby sell, assign and transfer to the Buyers their option of May 22, 1951 with the John Paul Lumber Company, a Wisconsin corporation, subject to the terms and provisions of this agreement. There is included in said option agreement of May 22, 1951 a provision for the purchase of all the merchantable timber on the following described real property in Del Norte County, California:

The Southeast Quarter of the Southeast Quarter of Section 24 and the South Half of the Northwest Quarter and the North Half of the Southwest Quarter and the Southwest Quarter of the Southeast Quarter of Section 25, Township 17 North, Range 3 East.

The parties specifically agree and understand that this contract refers only to the option to purchase and does not extend to or cover the merchantable timber on the land just above described.

IT IS AGREED that the purchase price for the assignment of said option is the sum of SIX HUNDRED THOUSAND DOLLARS ($600,000.00), which the Buyers promise and agree to pay to the Sellers as follows:

1. The sum of THIRTY-FIVE THOUSAND DOLLARS ($35,000.00) upon the execution of this agreement, the receipt whereof is hereby acknowledged by the Sellers.

2. The sum of FIFTEEN THOUSAND DOLLARS ($15,000.00) on or before May 1, 1953.

3. The sum of FIFTY THOUSAND DOLLARS ($50,000.00) when the Buyers shall exercise the said option of May 22, 1951 with the John Paul Lumber Company.

4. The $100,000.00 to be paid as provided in Subparagraphs 1, 2 and 3 above provided is in payment of the last $100,000.00 due on the purchase price.

5. The remaining $500,000.00 of the purchase price shall be paid by the Buyers paying the Sellers at the rate of SIX DOLLARS ($6.00) per thousand board feet for all timber logged and removed by the Buyers from the lands covered by the option of May 22, 1951. Such payments shall be made by the Buyers on or before the 15th day of each calendar month for all timber logged and removed from the optioned property during the preceding calendar month.

6. Notwithstanding the provision of the payment of the balance of the purchase price at the rate of $6.00 per thousand, a minimum annual payment of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) shall be made on the purchase price each calendar year in installments of not less than $37,500.00 on or before January 1 and $37,500.00 on or before July 1 of each year. The first of such minimum semi-annual installments shall be due on January 1 or July 1 of any calendar year which is more than 119 days after the date of the order lifting the restraining order preventing logging operations on the optioned property which is now in effect in the proceedings in the courts of California in which both of the parties to this agreement are parties. The payments made by the Buyers on the basis of the $6.00 per thousand board feet, as above provided, shall be applied on the minimum payments herein provided to be made, but if the payments made on the basis of $6.00 per thousand board feet do not equal the specified minimum payments, the Buyers shall make up the difference on the dates specified. In the event the Buyers' payments exceed the minimum annual payment of $75,000.00 in any calendar year, they shall have the right and privilege of applying such excess against the minimum payment due for the succeeding calendar year or years. In no event, however, shall the Buyers be relieved from paying at the rate of $6.00 per thousand board feet for all timber logged and removed, as herein provided.

\*         \*         \*         \*         \*         \*         \*

IT IS AGREED that the provision for the payment of $15,000.00 on the purchase price on or before May 1, 1953 is made upon the expectation of the parties that the Buyers will be able to start logging operations on a portion of the property as soon as weather conditions permit. If, either by action of the John Paul Lumber Company or the restraining order of any court having jurisdiction in the matter, the Buyers are prevented or restrained from conducting such logging operations, the time for the payment of the $15,000.00 shall be extended by a period equal to the period between the date on which the Buyers are so prevented or restrained from proceeding with their logging operations and May 1, 1953. This extension shall apply equally whether it should go into effect prior to the starting of logging operations by the Buyers or after the Buyers have started logging operations and prior to May 1, 1953.

IT IS AGREED that the Buyers specifically assume all payments to be made to the John Paul Lumber Company under said option, a copy of which is attached

as Exhibit A hereto. The Buyers further assume and agree to perform all the terms and conditions of said option once the same has been exercised and to keep the same free and clear of any default on their part.

\* \* \* \* \* \* \*

It is Agreed and recognized by the parties that the title of the John Paul Lumber Company to the optioned timber is subject to court litigation between the said John Paul Lumber Company and one Samuel Agnew in the courts of the State of California; that the trial court has decided said litigation in favor of the John Paul Lumber Company. In the event that the ultimate and final decision in said litigation should be against the John Paul Lumber Company so that neither the John Paul Lumber Company nor O. O. Barker is able to supply merchantable title to said timber, then either party may terminate and end this agreement and the Buyers shall be under no further obligation or liability hereunder, except as to any liabilities or obligations which had accrued as of the date of termination. The Buyers shall have no claim for damages or otherwise as against the Sellers and the Sellers shall keep and retain as their own all payments theretofore made to them by the Buyers under this agreement in the event of such termination. The Buyers accept the entire risk of title and shall have no claim of any kind against the Sellers in the event title is not provided under said option.

\* \* \* \* \* \* \*

It is Agreed that the Sellers shall and they do hereby warrant and represent to the Buyers that they are the sole owners and holders of said option of May 22, 1951 and that, other than such assignment and transfer as may be made between themselves, they have made no other or prior assignment, transfer or encumbrance of said option. The Sellers further warrant and represent to the Buyers that they have the present right to sell, assign and transfer said option to the Buyers.

\* \* \* \* \* \* \*

It is Agreed that from and after the execution of this agreement the risk of loss, damage or destruction to or of the said timber covered by the option of May 22, 1951, whether by fire or other casualty, rests upon the Buyers and the damage to or destruction of the timber from any cause shall not relieve the Buyers from their obligation hereunder to pay the full purchase price.

It is Agreed that said option agreement of May 22, 1951 gives the purchaser a period of not to exceed sixty (60) days after the purchaser has been notified by the seller in writing that the seller is able to furnish a good merchantable title to said timber. The Buyers agree to exercise the said option within the first forty-five (45) days of said 60-day period. In the event the Buyers shall not exercise said option within the first 45-day period, the Sellers herein shall have the right to exercise the said option, and in such event this agreement shall terminate and end, as well as all the Buyers' rights hereunder, and the Sellers shall keep as agreed and liquidated damages any and all payments which the Buyers may have heretofore made under this contract. The Buyers herein agree that forthwith after the execution of this agreement they shall notify the John Paul Lumber Company of their acquisition of the said option agreement and that the notice of merchantable title shall be given to them as the optionee under said agreement. \* \* \*

It is Agreed that time is of the essence of this agreement and in the event the Buyers shall default in making any of the payments herein provided to be made and such default shall continue for a period of 15 days, and in the event they shall default in the performance of any of the other provisions of this agreement and such default as to anything other than money payments shall

continue for a period of 30 days, that the Sellers shall, in either event, have the right and option to terminate and end this agreement and the Buyers' rights to exercise the option, or under the option, if the option shall have been exercised, shall terminate and end and the Sellers shall become repossessed of all their former rights and all of the Buyers' rights under said option, either exercised or unexercised, or any contract which might be executed after the exercise of the option. In the event of default, as herein provided, the Sellers may, as alternative relief, declare the entire balance of the purchase price due and payable and proceed to collect the same or bring suit or action to avail themselves of any other remedy which may be available to them in law or equity. The failure of the Sellers to insist upon the strict and literal performance of the terms of this contract by the Buyers shall not constitute a waiver of the time essence clause, nor require any further or new notice that thereafter time shall again be the essence of this agreement.

\* \* \* \* \* \* \*

IT IS AGREED that this agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties. The Buyers shall not assign nor transfer this agreement, nor their rights hereunder, however, without the written consent of the Sellers be first had and obtaired. The sellers shall not unreasonably withhold their consent to the assignment of this agreement.

IT IS AGREED that it is the desire of all parties that logging operations be started on the optioned property as soon as possible. The parties are also in agreement that two things will have to be accomplished before such logging operations can start. These are:

1. The consent of the John Paul Lumber Company to the conducting of logging operations on the property must be obtained.

2. The present pending litigation in the State of California as between the parties to this agreement, in addition to other parties, has a restraining order prohibiting any logging operations on the property. This restraining order must be terminated and ended.

Both parties agree to use their best efforts toward a speedy settlement and dismissal of the said California court proceedings between them and the termination of the restraining order now in effect. The parties are in agreement that the start of such logging operations in advance of the John Paul Lumber Company supplying merchantable title shall not constitute nor be deemed an exercise of the option and that agreement of the John Paul Lumber Company to this effect should be obtained.

Since reading the foregoing portion of this contract, and before executing it, the parties have agreed upon the following modification of Subparagraph 6 appearing on Pages 2 and 3 of this agreement. The paragraph shall be modified by the addition of the following paragraph:

No such minimum semi-annual payments as provided in Paragraph 6 shall be due if either by action of the John Paul Lumber Company or by restraining order of the court in the litigation between the John Paul Lumber Company and Samuel Agnew in which the trial court has previously rendered a decision the Buyers are prevented or restrained from conducting logging operations on said property and no such minimum semi-annual installments shall be required during the time the Buyers are so prevented from conducting logging operations on the optioned property. \* \* \*

After entering into this agreement of January 21, 1953, with Webb, Linkhart, and S. H. & W. Lumber Company, the partnership obtained the consent of the John Paul Lumber Company to proceed with

logging operations on the John Paul tract. This consent was granted to the partnership by a letter from John Paul Lumber Company to the partnership dated January 30, 1953, as follows:

This is to authorize you to enter upon and log over property owned by the John Paul Lumber Company, Del Norte County, California, beginning as of this date.

You have full authority to cut and remove timber, construct roads, and to do any and all things necessary and adjunct to your logging operations, provided that you comply fully with all the provisions, terms and agreements contained in the agreement between the John Paul Lumber Company and Mr. Ted R. Webb of O'Brien, Oregon, dated May, 1951, and as modified or enlarged upon in the agreement between yourselves and Messrs. Webb, Linkhart and Hogan, dated January 21, 1953. We understand that your acting hereunder does not constitute an exercise of the option contained in said agreement.

On or about January 30, 1953, the partnership entered into an undated agreement with John Paul Lumber Company reading as follows:

It is hereby agreed by and between Richard E. Nealy and James A. Carpenter, dba Nealy Logging Co. and John Paul Lumber Co. that the former will pay in addition to any sums called for in the option agreement dated May 22, 1951, the sum of 12½ cents per thousand board feet until such time as a total sum of $12,500 has been paid.

Under date of January 31, 1953, Webb, Linkhart, and S. H. & W. Lumber Company entered into an agreement with John Paul Lumber Company which provided, in part, as follows:

For and in consideration of the JOHN PAUL LUMBER COMPANY permitting the undersigned and their assignees to immediately commence logging operations upon lands of the company without exercising their option therefor and also agreeing to lift the injunction pending against such assigns, and waiving its rights to double stumpage, damages and costs that might be recoverable in the litigation pending and other considerations;

The undersigned [Webb, Linkhart, and S. H. & W. Lumber Company] jointly and severally agree to pay to the JOHN PAUL LUMBER COMPANY, in addition to any and all sums provided for in that certain agreement dated May 22, 1951, between Ted R. Webb and John Paul Lumber Company, an additional sum of 37½ cents per M board feet upon any and all merchantable logs cut and removed from the property of the company in Del Norte County, California, whether cut and removed by the undersigned or their agents or assigns, until a total sum of $37,500 has been paid hereunder. These payments to be made at the same time and in accordance with the same conditions as those for payments for stumpage set forth in the agreement of May 22, 1951. The above additional payments do not apply to any timber already purchased prior to this date.

Any defaults in payment of said 37½ cents to be considered the same as defaults under said prior agreement referred to and will constitute a default of said prior agreement.

The partnership began logging operations on the John Paul tract shortly after January 31, 1953. On February 13, 1953, Agnew secured an injunction in the California Superior Court, compelling the part-

nership to cease logging operations. Thereafter, Agnew and the partnership entered into an agreement entitled "Timber Cutting Agreement." This agreement dated March 23, 1953, provided, in part, as follows:

THIS AGREEMENT made and executed this 23rd day of March 1953, by and between SAMUEL A. AGNEW, hereinafter referred to as Agnew, and RICHARD E. NEALY and JAMES A. CARPENTER, doing business as co-partners under the name and style of NEALY LOGGING COMPANY, hereinafter referred to as Nealy,

WITNESSETH:

WHEREAS litigation is now pending between John Paul Lumber Company, a Wisconsin corporation, and Agnew, relating to the ownership of a certain tract of timberland situated in Del Norte County, California * * * and,

WHEREAS, said action was brought in the Superior Court of the State of California in and for the County of Del Norte and entitled "John Paul Lumber Co., a corporation, vs. Samuel A. Agnew, et al", No. 4022; and,

WHEREAS an appeal is now pending from a judgment entered in said action; and

WHEREAS Nealy represents that it has made certain arrangements with John Paul Lumber Co. whereby Nealy claims the right to cut, remove and appropriate timber from all of the lands involved in said action, and whereas Nealy has heretofore cut, appropriated and removed certain timber from the lands involved in said action; and,

WHEREAS Agnew has heretofore commenced a suit against Nealy, naming therein as defendants also B. B. Hughes and George Cook, seeking damages for the cutting and removal of said timber and an injunction to prohibit further removal thereof, which action was filed in the Superior Court of the State of California in and for the County of Del Norte and entitled "Samuel A. Agnew, plaintiff, vs. Richard E. Nealy, et al, defendants", No. 4955 in the files and records of said court; and,

WHEREAS, a preliminary injunction has been granted in said suit prohibiting the persons named above as defendants from cutting, removing or appropriating timber from certain lands, being the same lands described in the suit entitled "John Paul Lumber Co., vs. Samuel A. Agnew, et al"; and,

WHEREAS the parties hereto desire to settle said damage and injunction suit upon the terms and conditions hereinafter set forth with the view of protecting the rights of all the parties in interest in the event of either an affirmance or a reversal of the judgment entered in the action entitled "John Paul Lumber Co. vs. Samuel A. Agnew, et al",

Now, THEREFORE, the parties hereto agree as follows:

1. Agnew hereby grants to Nealy the license and privilege until January 1, 1954, to enter upon the lands involved in the action entitled "John Paul Lumber Co. vs. Samuel A. Agnew, et al" and to cut, remove and appropriate the timber standing, lying or being thereon in accordance with the terms of this agreement. It is expressly agreed that Agnew does not warrant or represent that he has title to said lands or the right to grant this license. The within consideration passing to Agnew under the terms of the within agreement shall be in full compensation to him for all his right, title and interest, if any, in and to any and all timber heretofore and hereafter cut, removed and appropriated by Nealy in accordance with the terms of this agreement.

2. In exercising the license and privilege herein granted, Nealy shall not log and remove any quantity in excess of 15 million board feet of merchantable

timber. Timber heretofore cut and removed by Nealy from the lands subject to this agreement shall not be included in said 15 million feet.

3. Nealy agrees within 15 days after the execution of this agreement to deposit with the escrow agent, hereinafter named, scale sheets showing the quantity of timber removed by Nealy or his agents, contractors, employees or licenses prior to the date of this agreement from the lands hereinabove described, including timber removed by S H & W Lumber Company under license from Nealy. Nealy agrees within 60 days after the execution of this agreement to deposit with the escrow agent, hereinafter named, a sum of money equal to $15.00 per thousand board feet for all said timber heretofore removed from the lands hereinabove described. Said sum shall be held by said escrow agent in accordance with the terms and conditions hereinafter set forth with reference to timber hereinafter cut and removed.

4. Nealy will deposit in escrow with the Bank of America, Eureka, California Branch, the sum of $15.00 per thousand feet for all timber scaled under the terms of this agreement. Payments into escrow will be made twice monthly. Payment for timber scaled during the period from the 1st to the 15th of each calendar month shall be deposited on or before the 25th of the month, together with the scale slips, showing the quantity and species of the timber scaled, together with the area from which it has been removed. A similar payment and supporting data will be made on or before the 10th day of each calendar month for timber scaled from the 16th to the end of the preceding calendar month. The terms of the escrow agreement shall require that such funds be held by the escrow agent pending final determination of the action entitled "John Paul Lumber Co. vs. Samuel A. Agnew, et al", and upon such final determination the funds shall be paid to Samuel A. Agnew if he rather than John Paul Lumber Co. is determined to be the owner of the real property subject to this agreement. If John Paul Lumber Co. is finally determined to be the owner of said real property the funds shall be paid to the individuals named and set forth in a certain escrow agreement entered into between Nealy, Ted R. Webb, Fred M. Linkhart, S H & W Lumber Company, a corporation, James C. Rodger as attorney in fact for O. O. Barker, Everett Skeeter and Siebert L. Sefton, and the same escrow agent hereinabove referred to. In the event the final determination in said action is that some portion of the lands are owned by Agnew and the other portions by John Paul Lumber Co., then the funds shall be allocated as between Agnew and said escrow agent for the benefit of the above individuals in said separate escrow agreement, in accordance with the ownership of the lands from which the scale tickets show that the timber was removed.

\* \* \* \* \* \* \*

6. It is agreed that logging is to proceed in an orderly fashion, taking into account the terrain and economical logging practices. In performing the logging operation Nealy shall cut the area clean of merchantable timber as the logging progresses.

\* \* \* \* \* \* \*

12. In the event Nealy defaults in the payment of any money due under the terms of this agreement for a period of 5 days after written notice of such default addressed to it at its office at Grants Pass, Oregon, then Agnew, if he so elects, shall require Nealy, in addition to paying the sum or sums due with interest thereon at 7% per anum from date it became due, to suspend operations hereunder so long as said default shall continue. The injunction heretofore issued in the action entitled "Samuel A. Agnew vs. Richard E. Nealy, et al" shall insofar as the parties hereto are concerned, be dissolved and the suit dismissed as to the parties hereto with each party to bear his own costs and

expenses. Nealy does hereby release Agnew from all liability or claims arising out of the filing of said action or the obtaining of the temporary restraining order or preliminary injunction granted therein and Nealy does hereby exonerate the surety upon the undertakings given upon said temporary restraining order and preliminary injunction.

13. Nealy agrees to have the form of the agreement attached hereto and entitled Addendum Agreement executed by B. B. Hughes, George Cook, Ted R. Webb, Fred M. Linkhart, S H & W Lumber Company, a corporation, and John Paul Lumber Company, a corporation, within 10 days from the date hereof * * *.

14. Agnew hereby releases Nealy, B. B. Hughes, George Cook and their representatives, agents, servants, employees, independent contractors and vendees, together with John Paul Lumber Company, Ted R. Webb, Fred M. Linkhart, and S H & W Lumber Company, from any and all liability or claims on account of or arising out of the cutting, removal or appropriation of timber upon lands subject to this agreement by Nealy or his agents, contractors, employees or licensees prior to the date of this agreement, to the extent that the scale on such timber is reported and the deposit made in escrow as required by paragraph 3 of this agreement.

15. It is understood and agreed that by the execution of the within agreement Nealy does not recognize any right, title or interest of Agnew in and to the timber above described but that the within agreement was entered into in order to avoid further litigation and in order to prevent further litigation between the parties.

16. It is agreed that during the term of this agreement, or the earlier final determination of John Paul Lumber Co. vs. Samuel A. Agnew, no logging shall take place upon the lands subject to the agreement, except as herein provided. Each of the parties represent that to the best of their knowledge and belief no person has any claim to logging rights thereon except the parties to this agreement and to the attached Addendum agreement.

\* \* \* \* \* \* \*

## ADDENDUM AGREEMENT

In consideration of the execution of the within agreement and particularly the granting of the privilege and license to Nealy Logging Company in accordance with the terms and condition of the attached agreement dated March 23rd 1953, TED R. WEBB. FRED M. LINKHART, S H & W LUMBER COMPANY, B. B. HUGHES, GEORGE COOK and JOHN PAUL LUMBER COMPANY, and each of them, do hereby consent that the suit entitled "Samuel A. Agnew vs. Richard E. Nealy, et al", now pending in the Superior Court of the State of California in the County of Del Norte under clerk's file No. 4955, may be dismissed and the temporary restraining order and preliminary injunction issued in connection therewith will be dissolved, each party to bear his own costs and expenses.

The undersigned, and each of them, do hereby release Samuel A. Agnew from any and all liability or claims arising out of the filing of said action or the obtaining of the temporary restraining order and preliminary injunction granted therein and do hereby exonerate the surety upon the undertakings given upon said temporary restraining order and preliminary injunction.

The undersigned further agree that during the term of the within agreement or until the earlier final determination of John Paul Lumber Company vs. Samuel A. Agnew they will not engage in logging operations on the property or authorize any one else to do so.

On March 19, 1953, the partnership, Agnew, and the Bank of America executed an escrow agreement, providing that the partnership was to deposit in escrow with the Bank of America $15 per thousand board feet of timber cut pending final determination of the litigation between the John Paul Lumber Company and Samuel A. Agnew. The escrow agreement further provided that should the final determination of the litigation result in a decision that the property was owned by Agnew the escrow funds were to be delivered to him and provided the various parties to whom the funds were to be distributed should the final determination in the litigation be that the property was owned by the John Paul Lumber Company.

On March 27, 1953, the partnership entered into a modification agreement with Webb, Linkhart, and S. H. & W. Lumber Company postponing the date of payment of $15,000 which was to be paid by the partnership to Webb, Linkhart, and S. H. & W. Lumber Company on May 1, 1953. Under the modification agreement $5,000 was to be paid to each of the sellers Webb and Linkhart on or before June 1, 1953, and the remaining $5,000 of the $15,000 previously due to paid on or before May 1, 1953, was to be paid to S. H. & W. Lumber Company at the conclusion of the litigation between Agnew and John Paul Lumber Company or by May 1, 1954, whichever event occurred first. This modification agreement further provided, in part, as follows:

2. The Buyers shall continue their logging operations on the optioned property in accordance with the agreement entered into between them and one Samuel Agnew, who is the Defendant in the action in Del Norte County, California, brought by the John Paul Lumber Company, which is now on appeal in the District Court of Appeals. The Buyers shall, however, instead of making payments to the Sellers as provided for under the contract of January 21, 1953 between the parties above referred to, pay said money into escrow as provided under the Buyers' agreement with said Samuel Agnew, which money shall be paid to the Eureka California Branch of the Bank of America. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

4. Said escrow instructions to be executed by the Buyers to the Eureka California Branch of the Bank of America shall further instruct the said escrow bank, in the event the appeal of said Samuel Agnew is unsuccessful, to remit to the Sellers the sum of $6.00 per thousand board feet, less the Sellers' proportionate share of the cost of the escrow, which shall cover the payment to the Sellers for the timber removed under the contract of January 21, 1953. It is understood that the other $6.00 of the $12.00 due the Sellers under the contract of January 21, 1953 shall be remitted to the John Paul Lumber Company.

5. If the John Paul Lumber Company shall not be successful in the final determination of the case between the said John Paul Lumber Company and Samuel Agnew no further payment of any kind shall be due the Sellers from the Buyers. * * *

6. It is recognized by the parties that subsequent to the execution of the contract of January 21, 1953, the parties to said contract and to this modification agreement agreed to pay to the said John Paul Lumber Company an additional

50¢ per thousand board feet, with 12½¢ of said sum to be paid by the Buyers and 12½¢ of said sum to be paid by each of the Sellers. It is recognized that by reason of payments being made into escrow with the Eureka Branch of the Bank of America under the agreement with Samuel Agnew that there will be cross-demands between some of the parties with regard to the payment of the 12½¢ per thousand from each of the different parties, as herein stated. The parties hereto agree that all of said cross-demands shall be adjusted by the parties within thirty (30) days from the final determination of the appeal brought by Samuel Agnew and each party shall pay the other the sums necessary to adjust their respective cross-demands. * * *

Under date of March 1, 1954, Agnew and the partnership executed an agreement entitled "Extension Agreement" which provided, in part, as follows:

WHEREAS, Agnew and Nealy have heretofore entered into a certain "Timber Cutting Agreement" dated March 23, 1953, to which there was appended a certain "Addendum Agreement" dated March 23, 1953, executed by B. B. Hughes, George A. Cook, Ted R. Webb, Fred M. Linkhart, S. H. and W. Lumber Company and John Paul Lumber Company; and

WHEREAS, the said Timber Cutting Agreement and Addendum Agreement were entered into for the purpose of regulating the terms and conditions under which lumbering and logging operations might be conducted upon certain timberlands, the title to which was involved in litigation; and

WHEREAS, the term of said two contracts, dated March 23, 1953, expired on January 1, 1954, and the litigation involving the title to said timberlands has not yet been finally concluded.

Now, THEREFORE, the parties hereto agree as follows:

(1) The term of the Timber Cutting Agreement dated March 23, 1953, is hereby extended to and including December 31, 1954. Except as herein provided, all of the provisions of said Timber Cutting Agreement shall be applicable to the additional term herein provided for.

(2) Nealy shall not log and remove any quantity of timber during the extension period herein provided, in excess of 15 million feet of merchantable timber. Logs scaled and paid for prior to January 1, 1954 but not removed from the premises by that date, may be removed without counting against the total that may be removed under this extension. Logs not reported and paid for prior to January 1, 1954 and not removed from said lands shall be counted against the total to be removed under this extension, it being the intention of the parties that under the contract dated March 23, 1953 and this extension thereof, Nealy is given the right and privilege to cut and remove from said lands a sum total of 30 million feet of timber.

(3) The sum to be deposited in escrow by Nealy for all timber logged during the extended period herein provided for shall be $15 per thousand board feet.

(4) The areas to be logged by Nealy are designated on the logging plan attached hereto and marked Exhibit A * * *.

(5) Timber shall be scaled as soon as practicable after it is felled * * *.

(6) In lieu of delivering scale tickets to the escrow agent, as provided in the agreement of March 23, 1953, Nealy will deliver the scale tickets to Agnew along with three copies of a summary sheet * * *. The parties hereto agree to execute such supplementary escrow instructions as Bank of America may require to carry out the agreements contained in this paragraph.

*      *      *      *      *      *      *

(12) Nealy agrees to have the Addendum Agreement attached hereto executed by John Paul Lumber Company within thirty (30) days from the date hereof and this extension agreement shall terminate unless it is so executed within said time.

(13) It is the intention of the parties hereto that no logging shall take place on the timberlands subject hereto during the term of this extension agreement or until the earlier final determination of John Paul Lumber Company v. Samuel A. Agnew, et al., except for Nealy's operations pursuant to the terms hereof. In that connection, Nealy represents that to the best of their knowledge and belief they have acquired the sole and exclusive logging rights from all persons other than Agnew claiming under John Paul Lumber Company.

\* \* \* \* \* \* \*

### ADDENDUM AGREEMENT

In Consideration of the execution of the within extension agreement, JOHN PAUL LUMBER COMPANY agrees that during the term thereof or until the earlier final determination of John Paul Lumber Company v. Samuel A. Agnew, et al., it will not engage in logging operations on the timberlands subject to the within agreement or authorize anyone other than Nealy Logging Company to do so.

Under date of April 2, 1954, the partnership entered into an agreement with Webb, Linkhart, S. H. & W. Lumber Company and with William J. McLean and William M. McAllister, which provided, in part, as follows:

This Agreement made and entered into this 2nd day of April, 1954, by and between Ted R. Webb, Fred M. Linkhart and S. H. & W. Lumber Company, an Oregon corporation, hereinafter known as the Sellers, and William J. McLean and Wm. M. McAllister, Trustee, hereinafter known as the Assignees, and Richard E. Nealy and James A. Carpenter, doing business as the Nealy Logging Company, hereinafter known as the Buyers, WITNESSETH:

\* \* \* \* \* \* \*

Now, Therefore, for and in consideration of the foregoing and the mutual promises and agreements herein contained, and the payments to be made by the buyers, the parties do hereby contract and agree with each other as follows:

1. It is understood that paragraph 3 on page 2 of said agreement of January 21, 1953, provided that the additional sum of Fifty Thousand Dollars ($50,000.00) should be paid by the buyers when they exercised the option of May 22, 1951, with the John Paul Lumber Company, and that the buyers have not exercised said option because the litigation pending between John Paul Lumber Company and Samuel A. Agnew has not been determined, and the parties desire to modify the provisions of said agreement with regard to the payment of said sum of Fifty Thousand Dollars ($50,000.00). In consideration of the permission granted to the buyers to remove timber from the premises described in said option of May 22, 1951, prior to the termination of said litigation and the exercise of said option, the buyers hereby covenant and agree to pay to the sellers and said assignees the said sum of Fifty Thousand Dollars ($50,000.00) whether or not the buyers exercise said option and regardless of the outcome of the said litigation pending between the John Paul Lumber Company and Samuel A. Agnew, which sum shall be payable as follows:

a. The sum of Ten Thousand Dollars ($10,000.00) upon the execution of this agreement.

b. The sum of Five Thousand Dollars ($5,000.00) per month, with the first such payment due on or before April 10, 1954, and a like payment of not less

than Five Thousand Dollars ($5,000.00) on or before the 10th day of each successive and consecutive calendar month thereafter until the entire Fifty Thousand Dollars ($50,000.00) has been paid in full; provided that in the event the buyers do exercise the option of May 22, 1951, any balance of the Fifty Thousand Dollars ($50,000.00) remaining unpaid shall become immediately due and payable.

c. In the event that the buyers fail to pay any of said Five Thousand Dollar ($5,000.00) installments when due, the entire unpaid balance of the sum of Fifty Thousand Dollars ($50,000.00) shall at the option of the sellers and assignees become immediately due and payable.

It is agreed that the sum of Fifty Thousand Dollars ($50,000.00) required to be paid under the provisions of this paragraph shall be credited upon the purchase price to become due and payable to the sellers and assignees if the said option of May 22, 1951, is exercised by the buyers.

2. Each and all of the payments made by the buyers under this agreement shall be paid as follows to the respective parties:

\* \* \* \* \* \* \*

3. As provided in said extension agreement of the 1st day of March, 1954, the buyers shall deposit with the Bank of America, Eureka, California Branch, the sum of Fifteen Dollars ($15.00) per thousand board feet for all timber logged by them during 1954 from the lands described in said extension agreement, and the buyers shall furnish to the sellers and assignees copies of the scale tickets showing the footage of logs removed by the buyers from said lands during 1954.

4. It is agreed that immediately after the execution of this agreement, the parties hereto will join in the preparation and execution of escrow instructions to the Bank of America, Eureka, California Branch, to provide for the disposition of the money deposited with or which may hereafter be deposited with said bank by Richard E. Nealy and James A. Carpenter, doing business as Nealy Logging Company, or any other person, firm or corporation on account of the cutting of timber from the lands described in said timber sale contract and option agreement of May 22, 1951. Said escrow instructions shall instruct the bank that in the event that the litigation between the said John Paul Lumber Company and Samuel A. Agnew is finally determined in favor of the said Samuel A. Agnew, all of said moneys deposited with, or which may hereafter be deposited with said bank as aforesaid, shall be paid to the said Samuel A. Agnew. Said escrow instructions shall further instruct said bank that in the event said litigation is finally determined in favor of the John Paul Lumber Company, the money now deposited with, or which may hereafter be deposited with said bank as aforesaid, shall be disbursed as follows:

a. The sum of $6.50 per thousand board feet to John Paul Lumber Company.

b. The sum of $1.87½ per thousand board feet to Ted R. Webb of the sellers.

c. The sum of $1.12½ per thousand board feet to the seller, Fred M. Linkhart.

d. The sum of $0.75 per thousand board feet to the assignees, William J. McLean and Wm. M. McAllister, trustee, to be paid by check payable to William J. McLean and Wm. M. McAllister, trustee, Post Office Box 226, Medford, Oregon.

e. The sum of $1.87½ per thousand board feet to the seller, S. H. & W. Lumber Company.

f. The sum of $4,500.45 to S. H. & W. Lumber Company.

g. The balance remaining in escrow after the above payments to be remitted to the buyers.

h. From each of the above payments shall be deducted the recipient's proportionate share of the escrow expense

\* \* \* \* \* \* \*

6. The parties all recognize and agree that this and the prior agreements and actions of the Buyers do not constitute an exercise by them of the option of May 22, 1951.

7. Except as provided in said modification agreement of March 27, 1953, and as modified by the terms hereof, said agreement of January 21, 1953 shall remain in full force and effect according to the terms thereof.

Beginning shortly after March 23, 1953, when the agreement between the partnership and Agnew was executed, the partnership began to cut and remove timber from the John Paul tract and continued to cut and remove the timber therefrom from that time throughout the taxable years here involved.

The litigation between John Paul Lumber Company and Agnew terminated in May 1954 with decision in favor of the former. As a result John Paul Lumber Company was judged the owner of the John Paul tract, the claim of Samuel A. Agnew was denied, and the escrow terminated. On July 18, 1955, Nealy Logging Company exercised the option on the John Paul tract. The option was exercised by mailing to the John Paul Lumber Company a cashier's check for $25,000 in a letter dated July 18, 1955, in accordance with the option provisions of the Timber Sales Contract and Option Agreement dated May 22, 1951. The body of the letter dated July 18, 1955, is as follows:

Enclosed is a cashiers check #7050 for $25,000.00. We herewith exercise our option to purchase the timber on all the John Paul Lumber Co. lands in Del Norte County, California, as per that certain agreement entered into between John Paul Lumber Co. as seller and Ted R. Webb as buyer dated May 22, 1951. This agreement and right to exercise the option was purchased by us from Ted R. Webb, et al, on January 21, 1953.

In exercising this option we wish to state the following as a matter of record:

1. We are not accepting the title report as presenting a merchantable title and in no way shall the exercising of the option be construed to be a waiver of any defect appearing against the title.

2. We are in no way accepting liability for any of the items outstanding against the title, and in the event of any claim will hold the seller responsible for clearance of the title, however should the occasion require it, we will provide any documents or information we may have that would be of help in maintaining the present status of the timber ownership and income therefrom.

3. We request a new report showing clearance of the defects as listed in your letter of May 30, 1955 to us.

We would appreciate a letter from you stating that the $25,000.00 has been received and the option exercised as agreed to.

Following the commencement of logging operations on the John Paul tract the partnership made expenditures for road maintenance with respect to such property as follows:

| | |
|---|---|
| 1953 | $3,142.92 |
| 1954 | 1,651.16 |
| 1955 | 6,349.35 |

These amounts were charged to road maintenance and deducted as expense on the partnership returns for the years 1953, 1954, and 1955, respectively.

For the taxable year July 1954 through June 1955, the County of Del Norte assessed taxes on the John Paul tract to S. A. Agnew and John Paul Lumber Company. The portion of the taxes so assessed allocable to the land was paid by John Paul Lumber Company, and the portion allocable to the timber was paid by the partnership.

During the taxable year 1954 the partnership cut 17,631,000 board feet of fir timber from the John Paul tract. The fair market value on January 1, 1954, of this timber was $22 per thousand board feet.

During the taxable year 1955 the partnership cut 17,872,000 board feet of fir timber and 188,000 board feet of pine timber from the John Paul tract. The fair market value on January 1, 1955, of this fir and pine timber was $28 and $30 per thousand board feet, respectively.

During the taxable year 1956 the partnership cut 9,787,000 board feet of fir timber from the John Paul tract. The fair market value on January 1, 1956, of this timber was $33 per thousand board feet.

In its partnership returns, the partnership reported long-term capital gains from the cutting of timber on the John Paul tract in the amounts and years as follows:

| | |
|---|---|
| 1954 | $120, 243. 68 |
| 1955 | 231, 901. 10 |
| 1956 | 167, 823. 46 |

Such gains were reported pursuant to election of the partners to claim the benefits of section 631(a) of the Internal Revenue Code of 1954 and deductions for depletion were claimed from ordinary income of the partnership in like amounts.

On their individual income tax returns for the taxable years petitioners reported their respective shares of income or loss from the partnership as reflected on the partnership returns.

In his deficiency notices respondent determined that the petitioners were not entitled to the benefits of section 631(a) of the 1954 Code and disallowed the claimed deductions for depletion, thereby increasing the ordinary income of the partnership for the years 1954, 1955, and 1956 by the amounts of $120,243.68, $231,901.10, and $167,823.46, respectively, and long-term capital gains were decreased in like amounts.

The agreement between Webb, Linkhart, S. H. & W. Lumber Company and the partnership dated January 21, 1953, together with the authorization of the John Paul Lumber Company dated January 30, 1953, to petitioners to enter upon the property for the purpose of logging as of that date granted to the partnership a contract right to cut timber on the John Paul tract. The logs produced from the

John Paul tract were sold by the partnership for its own account on the open market.

The stipulated facts are found accordingly.

OPINION.

The petitioners contend that they come squarely within the provisions of section 631(a) of the Internal Revenue Code of 1954.[1]

Respondent admits that the petitioners elected on their return to treat the cutting of timber from the John Paul tract under the provisions of section 631(a) and does not contend that the timber cut by petitioners from the John Paul tract in each of the taxable years here involved was not cut for sale or for use in petitioners' trade or business. However, respondent contends that petitioners did not have a contract right to cut such timber which they had held for a period of more than 6 months before the beginning of each of the taxable years here involved. It is respondent's contention that petitioners obtained no contract right to cut the timber from the John Paul tract until July 18, 1955, when the partnership exercised the option to purchase the timber on the John Paul tract. Respondent relies, in support of his contention, primarily on *Ah Pah Redwood Co.* v. *Commissioner*, 251 F. 2d 163 (C.A. 9, 1957), reversing in part 26 T.C. 1197 (1957), and *George L. Jantzer*, 32 T.C. 161 (1959), affd. 284 F. 2d 348 (C.A. 9, 1960). The two cases relied on by respondent involved the question of whether the taxpayers therein had disposed of timber owned by them with a retention of an economic interest therein so as to come within the provisions of section 117(k)(2) of the Internal Revenue Code of 1939, which in substance contains the same provisions as section 631(b) of the Internal Revenue Code of 1954. Each of those cases held that an oral arrangement between the owner of timber and the logger whereby the logger paid to the owner an agreed

---

[1] SEC 631. GAIN OR LOSS IN THE CASE OF TIMBER OR COAL.

(a) ELECTION TO CONSIDER CUTTING AS SALE OR EXCHANGE.—If the taxpayer so elects on his return for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than 6 months before the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. If such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the fair market value of such timber, and the adjusted basis for depletion of such timber in the hands of the taxpayer. Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor. If a taxpayer makes an election under this subsection, such election shall apply with respect to all timber which is owned by the taxpayer or which the taxpayer has a contract right to cut and shall be binding on the taxpayer for the taxable year for which the election is made and for all subsequent years, unless the Secretary or his delegate, on showing of undue hardship, permits the taxpayer to revoke his election; such revocation, however, shall preclude any further elections under this subsection except with the consent of the Secretary or his delegate. For purposes of this subsection and subsection (b), the term "timber" includes evergreen trees which are more than 6 years old at the time severed from the roots and are sold for ornamental purposes.

price for timber cut but was not required to cut any specified quantity of timber constituted a license to cut and not a contract disposing of timber. The disposal of the timber under the license arrangements was held to have occurred as the timber was felled at which time title passed and the prior owner retained no economic interest in the timber. The question involved in each of those cases was whether the oral arrangement between the owner of the timber and the logger constituted a "disposal" of the timber at the time the oral arrangement was made.

There are substantial differences in the provisions of sections 631(b) and 631(a) of the Internal Revenue Code of 1954. Section 631(b) provides for the treatment of income from disposal of timber by the owner thereof under a contract by virtue of which such owner retains an economic interest in the timber, whereas section 631(a) (as did its predecessor section 117(k)(1) of the Internal Revenue Code of 1939) provides for the taxpayer who elects to do so to treat the cutting of timber, if he is the owner of such timber or has a contract right to cut such timber, as a sale or exchange of such timber cut during the year, and contains a special provision as to the method of computation of the gain or loss to be recognized as a capital gain or loss in the event the taxpayer elects to have the section apply. Cf. *Joe S. Ray*, 32 T.C. 1244, 1250 (1959), affd. 283 F. 2d 337 (C.A. 5, 1960).

Were the issue here involved whether the agreement between Webb, Linkhart, and S. H. & W. Lumber Company and the partnership or John Paul Lumber Company and the partnership was sufficient to constitute a disposal by them of the timber on the John Paul tract within the provisions of section 631(b) of the Internal Revenue Code of 1954, the *Ah Pah Redwoood Co.* case and the *George L. Jantzer* case would be in point. Even then those cases would not be necessarily controlling in view of the differences in the contracts involved. Cf. *Springfield Plywood Corporation*, 15 T.C. 697 (1950). However, the requisites for an agreement to constitute a "disposal" of timber are not helpful in determining the requisites for an agreement to constitute a "contract right to cut" timber.

The cases cited by the parties in their briefs which involve section 117(k)(1) of the Internal Revenue Code of 1939 deal primarily with whether the taxpayers therein were entitled under the various agreements involved to sell the timber cut for their own account or use it in their trade or business. However, in several of those cases, the right to cut the timber was under a contract which did not transfer title to the timber to the taxpayer there involved until the logs were felled. Cf. *Volney L. Pinkerton*, 28 T.C. 910 (1957); *United States* v. *Johnson*, 257 F. 2d 530 (C.A. 9, 1958); *Gilmore* v. *United States*, 180 F. Supp. 354 (Ct. Cl. 1960); and *Wirkkala* v. *United States*, 181 F.

Supp. 338 (W. D. Wash. 1960). In *United States* v. *Johnson*, *supra*, the contract involved referred to the timber company from whose land the taxpayer cut the logs as the "owner" and the partnership performing the cutting as the "logger." It is clear from these cases, as it is from the statute itself, that it is not necessary under section 631(a) of the 1954 Code that the taxpayer be the owner of the timber or that the timber be disposed of to him by the owner thereof prior to the time the logs are felled if he has a contract right to cut the timber which he has held for more than 6 months. We have set forth in some detail in our Findings of Fact the provisions of the various agreements entered into between the partnership and the various claimants to interests in the John Paul tract. We think it clear that the January 21, 1953, agreement between Webb, Linkhart, and S. H. & W. Lumber Company and the partnership granted to the partnership both an option to purchase and a right to cut the timber on the John Paul tract, the right to cut prior to exercise of the option being subject to obtaining the agreement thereto of John Paul Lumber Company. The agreement of January 21, 1953, contemplated that the partnership would exercise the right to cut the timber prior to exercise of the option to obtain ownership of the timber. When on January 30, 1953, John Paul Lumber Company granted to the partnership the immediate right to cut and remove timber in accordance with Webb's agreement with it and the partnership's agreement with Webb, Linkhart, and S. H. & W. Lumber Company, the petitioners had a complete contract right to cut timber. It is true that at that time Agnew was contending that the parties who had entered into the contracts with the partnership giving it a right to cut timber on the John Paul tract had no legal right to do so because of the claims of Agnew to ownership of the John Paul tract which had not been finally determined at that date. As finally determined, the John Paul Lumber Company did have ownership of the John Paul tract and had the right to dispose of the timber on that tract. However, on March 23, 1953, petitioners obtained the consent of Agnew to proceed with logging operations throughout the year 1953, and this agreement was extended in March of 1954 for a period that did not expire until after the final termination of the litigation between Agnew and John Paul Lumber Company. Because of the temporary injunction obtained by Agnew after the partnership commenced logging operations under its agreements with Webb, Linkhart, and S. H. & W. Lumber Company and with John Paul Lumber Company, it was necessary if the partnership was to continue logging of the John Paul tract that it either obtain the consent of Agnew to proceed with logging or attempt to have the temporary injunction removed. It is logical that the partnership should pursue the course of obtaining a license to cut from Agnew, when it was able to obtain a license and consent from Agnew which would be

without cost to it if the property was finally determined to be owned by John Paul Lumber Company. The agreement between Agnew and the partnership expressly provided that the partnership did not recognize that Agnew had any title to the property. This license and consent given by Agnew to the partnership to proceed immediately with the cutting of timber, while enabling petitioners to cut the timber without further litigation with Agnew, did not change the fact that petitioners had contracts with Webb, Linkhart, and S. H. & W. Lumber Company and with John Paul Lumber Company giving it a right to cut timber from the John Paul tract. The license from Agnew merely permitted the partnership to exercise its right to cut timber under its contract with the owner of the timber sooner than it would have been able to do if it had not obtained the license and consent from Agnew. The partnership had a contract right to cut the timber on the John Paul tract from January 30, 1953, when it had entered into agreements giving it such right with the owner of the timber and its assignees.

We, therefore, hold that each petitioner as a partner in Nealy Logging Company had a contract right to cut timber for sale from the John Paul tract which he had held for a period of more than 6 months before the beginning of any one of the taxable years here involved and having elected to do so is entitled to compute gain or loss under the provisions of section 631(a) of the Internal Revenue Code of 1954.

The parties have agreed to certain net operating loss carryback adjustments which make it necessary that decision be entered under Rule 50.

*Decision will be entered under Rule 50.*